A99A0633. ESTATE OF SAM FARKAS, INC. v. CLARK et al.

(517 SE2d 826)

ELDRIDGE, Judge.

This is an appeal from the October 2, 1997 judgment of $15,000 on a jury verdict of September 30, 1997, for Ray Clark and Robert M. Gosa, plaintiffs-appellees, who sued the Estate of Sam Farkas, Inc. ("Farkas Estate"), defendant-appellant, for fraud and breach of contract for sale of land.

The land had been owned for a number of years by the Farkas Estate and had also been occupied by William Taylor, a tenant at will, prior to the sale and who was in possession at the time of sale. The existence of a tenant in possession was known by the plaintiffs prior to the sale. On April 6, 1996, the land was sold for $36,850 to the plaintiffs, the highest bidders at public auction. On the same day upon the close of the auction, J. Durham & Associates, Inc., the auction company, had the plaintiffs sign a real estate sales contract based upon the terms of the auction, which contract was executed by

Leonard Farkas on behalf of the Farkas Estate. The terms of the contract provided:

> 3. [p]ossession of the property will be given to buyer as follows: "At Closing." . . . 4. The property is sold subject to the following conditions and stipulations: (a) At closing, Seller shall deliver to Buyer . . . said property . . . subject to the rights of any parties in possession pursuant to lease agreements as herein contemplated. . . . (d) The property . . . [is] being sold "as is-where is." Buyer acknowledges he has had ample opportunity to inspect the property and to have same inspected by his agents, and Buyer accepts the property in its present condition. Neither Auctioneer nor Seller has made any representations concerning the property. . . . 5. Rental Property. If the property is rental property, the rents will be prorated as of the date of closing and the sale will be subject to the rights of the tenant in possession. If there is a written lease agreement with the tenant, said lease agreement shall be assigned by Seller to Buyer at closing.

On May 20, 1996, the parties closed, but William Taylor refused to vacate and was a tenant holding over. Plaintiffs did not receive possession at closing. The Farkas Estate did not give the tenant notice to vacate or return the rent until after closing.

After the closing, William Taylor refused to vacate and claimed that he had rented the property for one year and had prepaid twelve months rent on April 5, 1996, to B & B, rental agents for the Farkas Estate. On April 16, 1996, B & B Rental Agency sought to return the unearned rent of $1,650 to Taylor, but he refused. Plaintiffs brought suit against Taylor for dispossession and received a writ of possession on July 8, 1996. Plaintiffs contended that a few days prior to the auction, they talked with Joe Durham and Wally Binns of the auction company about the tenant, and the plaintiffs stated that Leonard Farkas told them that there was a tenant on the property; that there was no lease; and that it would not be difficult to remove the tenant. Plaintiffs were assured that there would be no problem and that the tenant would be removed. They were not told when they would receive possession, but relied on the contract provision stating "at closing." The Farkas Estate did not deliver possession of the property until September 21, 1996. After closing, plaintiffs were told that the tenant would not leave and that it was their problem.

Plaintiffs sued the Farkas Estate for breach of contract and fraud in the inducement for entering into a rental agreement with Taylor on April 5, 1996, one day prior to the auction. On September

16, 1996, plaintiffs amended the complaint to add a verification. On September 4, 1997, plaintiffs filed their second amendment setting forth a count for fraud in tort. The case was tried before a jury on September 30, 1997, and a verdict was returned for plaintiffs.

On October 27, 1997, the Farkas Estate filed its motion for judgment notwithstanding the verdict and, in the alternative, a new trial. On September 10, 1998, the trial court denied the motions. On October 12, 1998, the Farkas Estate filed its notice of appeal to the denial of its motion for j.n.o.v. and, in the alternative, a new trial.

1. The Farkas Estate contends that the trial court erred in allowing the plaintiffs to proceed to trial and present evidence on the tort of actual fraud and breach of contract, rather than making an election between fraud in the inducement to set aside the contract or to affirm the contract and to sue in tort or contract for damages. We agree.

> In general, [when there is a merger provision in the contract], a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue [in contract] for breach; or (2) rescind the contract and sue in tort for fraud. (Cits.)

*Jones v. Cartee*, 227 Ga. App. 401, 402-403 (489 SE2d 141) (1997); accord *Wilhite v. Mays*, 239 Ga. 31 (235 SE2d 532) (1977); *City Dodge v. Gardner*, 232 Ga. 766, 768 (208 SE2d 794) (1974); *Cotton v. Bank South*, 231 Ga. App. 812, 813-814 (499 SE2d 129) (1998).

> Depending upon which of the two actions is ultimately pursued, the presence of a merger clause in the underlying contract may be determinative as to the successful outcome. If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger clause will prevent his recovery [in tort]. If, on the other hand, he does rescind the contract, the merger clause will not prevent his recovery under a tort theory.

(Citations and punctuation omitted.) *Jones v. Cartee*, supra at 403; accord *Cotton v. Bank South*, supra at 813-814. Stated another way,

> [a] party claiming he or she was fraudulently induced to enter a contract has two possible remedies: (1) to promptly rescind the contract after discovering the fraud and sue in tort for the recovery of the contract's consideration, as well as any other damages resulting from the fraud; or (2) affirm the contract and sue for damages resulting from the fraud [or contract]. *Hightower v. Century 21 Farish Realty*, 214 Ga.

App. 522, 523 (1) (448 SE2d 271) (1994). Where the party elects the second option and affirms the contract, however, he or she is bound by its terms. In this case, the contract's "merger" provision would estop a party bound by the terms of the contract from arguing that he or she relied on representations other than those contained in the contract. See *Rampey v. Jay Pontiac GMC Truck*, 211 Ga. App. 632, 633 (440 SE2d 52) (1993); *Carpenter v. Curtis*, 196 Ga. App. 234, 236-237 (395 SE2d 653) (1990).

*Kaye v. Ryland Group*, 228 Ga. App. 742, 743 (492 SE2d 729) (1997).

> This result obtains [as to a tort action for fraud] because where the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail.

(Citation and punctuation omitted.) *Rampey v. Jay Pontiac GMC Truck*, supra at 633.

> If the purchaser affirms the sales contract, he is bound by the contract's terms and is subject to any defenses which may be based on the contract. In the event the contract contains an entire agreement clause, that clause operates as a disclaimer, establishing that the written contract completely and comprehensively represents all the parties' agreement. This clause then bars the purchaser from asserting reliance on the alleged misrepresentation not contained within the contract. Therefore, any fraud claim the purchaser might assert would be barred because reliance is an element essential to establishing fraud. . . . By contrast, entire agreement clauses generally concern contractual liability, and provide that all oral representations have merged into the written contract. While an entire agreement provision may, in some instances, result in a waiver of claims, the parties to the contract have ultimate control over its impact by reducing all the vital terms of their contract to writing. Also, a party signing a contract containing an entire agreement clause is not absolutely bound by it. If that party later learns of a fraud that induced the contract but is not reflected in the contract's terms, the party has the choice of rescinding the contract and suing on the fraud or affirming the contract and being bound by its terms. The entire agree-

ment clause will bar the fraud claim only in the latter instance.

(Citations and punctuation omitted.) *Pennington v. Braxley*, 224 Ga. App. 344, 346-347 (480 SE2d 357) (1997).

> Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. (Cit.) *Roller-Ice v. Skating Clubs of Ga.*, 192 Ga. App. 140, 142 (384 SE2d 235) (1989) (physical precedent) [rev'd on other grounds, *Jones v. Cartee*, supra at 404-405 (1)]; see also *Flair Fashions v. SW CR Eisenhower Drive, Inc.*, 207 Ga. App. 78, 79 (427 SE2d 56) (1993).

(Punctuation omitted.) *Kaye v. Ryland Group*, supra at 743-744.

In this case, the written contract contained a merger provision: "[t]he property . . . [is] being sold 'as is-where is.' . . . 'Neither Auctioneer nor Seller has made any representations concerning the property. . . .'" See *Pennington v. Braxley*, supra at 345 (purchasing the property "as is"); *Kaye v. Ryland Group*, supra at 743 ("no representations made"); *Rampey v. Jay Pontiac GMC Truck*, supra at 633 ("as is"); *Hightower v. Century 21 Farish Realty*, supra at 523 (no reliance upon a representation of either real estate agent or seller). Plaintiffs knew of the tenant prior to the sale, but relied upon oral representations made regarding the tenant by the auction company and by Farkas, which representations the contract plainly stated could not be relied upon. Plaintiffs did not rescind the contract, but instead affirmed the contract and sued for breach of contract, as well as for actual fraud. Thus, the trial court erred in allowing the evidence of fraud to be submitted to the jury, because plaintiffs, by their conduct, affirmed the contract and, as a matter of law, the element of reliance was negated by the terms of the contract. Thus, the trial court committed reversible, plain legal error, which harmed the Farkas Estate.

2. The Farkas Estate contends that the trial court erred in denying its motion for directed verdict for breach of contract. We agree.

"The construction of a contract is a question of law for the court." OCGA § 13-2-1; *Long v. City of Midway*, 169 Ga. App. 72, 74 (311 SE2d 508) (1983); *Smiths Properties v. RTM Enterprises*, 160 Ga. App. 102, 103 (2) (286 SE2d 334) (1981). However, "[w]here the lan-

guage of a [contract] is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible [by the trial court]." (Citation and punctuation omitted.) *Reahard v. Ivester,* 188 Ga. App. 17, 19 (1) (371 SE2d 905) (1988); *Franchise Enterprises v. Ridgeway,* 157 Ga. App. 458, 461 (3) (278 SE2d 33) (1981).

This contract was plain, clear, and certain in its terms and was not ambiguous. Therefore, there was nothing for either the trial court or jury to construe. *Reahard v. Ivester,* supra at 17. But see *Salvatori Corp. v. Rubin,* 159 Ga. App. 369, 371-372 (1) (283 SE2d 326) (1981). Therefore, its plain meaning was for the court to determine as a matter of law. It was error to submit the legal construction of the contract terms to the jury for determination as a factual matter.

The provision for possession at closing was a general provision which was subject to the specific provisions of the contract that possession was subject to the rights of possession of any tenant and that any rent was subject to proration between the seller and buyer. If this construction is not given, then such terms would be rendered meaningless when the existence of a tenant was known by all parties. *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.,* 182 Ga. App. 671 (357 SE2d 100) (1987). These specific provisions made it clear that possession at closing was conditional upon the rights, if any, of the tenant and that actual possession would occur at the dispossession of the tenant. *Holtzclaw v. City of Dalton,* 189 Ga. App. 650, 652 (377 SE2d 196) (1988); *Griffin v. Barrett,* 155 Ga. App. 509, 510 (271 SE2d 647) (1980); *Broome v. Allstate Ins. Co.,* 144 Ga. App. 318, 319 (241 SE2d 34) (1977). The written or typed portion of the contract takes precedence over the printed portion of the contract only when the two are in conflict and cannot be reconciled. *Stanley v. Greenfield,* 207 Ga. 390 (2) (61 SE2d 818) (1950); *Patellis v. 100 Galleria Parkway Assoc.,* 214 Ga. App. 154, 155 (2) (447 SE2d 113) (1994). There occurred no breach of contract when plaintiffs could not gain possession for four months, because the contract provided for such known contingency and provided a remedy by proration of the rent. As a matter of law, the Farkas Estate was entitled to a directed verdict. Therefore, the trial court erred in failing to direct a verdict for the Farkas Estate. See *England v. Ga.-Fla. Co.,* 198 Ga. App. 704, 705 (1) (402 SE2d 783) (1991); *Davis v. Pachuilo,* 169 Ga. App. 677 (1) (314 SE2d 692) (1984); *Franchise Enterprises v. Ridgeway,* supra at 461 (3); *Guardian of Ga. v. Granite Equip. Leasing Corp.,* 130 Ga. App. 514, 518 (9) (203 SE2d 733) (1974). Likewise, as a matter of law, a judgment for the Farkas Estate was demanded, and the trial court erred in failing to grant j.n.o.v. *Pulte Home Corp. v. Woodland Nursery &c.,* 230 Ga. App. 455, 456 (1) (496 SE2d 546) (1998).

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED MAY 14, 1999.

*Leonard Farkas*, for appellant.
*Mathis Law Offices, Billy C. Mathis, Jr., Caroline A. Cormack*, for appellees.