A99A1807. PADEN v. MURRAY et al.
(523 SE2d 75)

BLACKBURN, Presiding Judge.

In this action regarding the purchase and sale of a residential home, the buyer, Dr. Scott W. Paden, appeals the trial court's grant of summary judgment to the sellers, William and Jean Murray, contending that: (1) the sales agreement should have been considered rescinded; (2) the Murrays fraudulently concealed latent defects in the home they sold to him; (3) the Murrays breached the sales agreement by failing to disclose defects in the home; and (4) Mr. Murray negligently constructed the home. For the reasons set forth below, we affirm the grant of summary judgment in part and reverse in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant [or denial] of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

The record shows that Paden signed an agreement dated May 28, 1997, to purchase the Murrays' home located at 1528 Hilltop

Road in Dublin. The Murrays accepted Paden's offer the following day, and the sale closed on June 27, 1997. Paden looked at the home only two times before he agreed to buy it, and he did not return to the home between the date of the agreement and closing. Paden and his family moved into the home on July 14, 1997.

Paden had the home inspected prior to closing by George Washington of the Washington Home Inspection Company; however, Paden did not discuss the inspection report with Washington until sometime after the closing date. Washington's inspection report described the home as an example of skilled craftsmanship, and Washington testified that he believed that the home had been adequately constructed. Washington's report listed only four minor repairs needed by the home, the cost of which was less than $500. Although these repairs had not been completed at the time of the closing, Paden decided to go through with the purchase nevertheless. After moving into the home, Paden discovered a number of allegedly new defects, including a wooden foundation, improperly sloped roof sections, a tainted water supply, electrical problems, termite infestation, and bat infestation. Paden described these problems in a letter to George Durden, his real estate agent, dated August 5, 1997. This document was later forwarded to the Murrays.

1. Paden contends that, after discovering new defects, he properly rescinded the contract to purchase the Murrays' home, and, therefore, he has a viable action against the Murrays for fraudulently inducing him to enter into the contract by failing to properly disclose these defects. We disagree.

> In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for breach; or (2) rescind the contract and sue in tort for fraud. Depending upon which of the two actions is ultimately pursued, the presence of a merger clause in the underlying contract may be determinative as to the successful outcome. If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract, and the merger clause will prevent his recovery. If, on the other hand, he does rescind the contract, the merger clause will not prevent his recovery under a tort theory.

(Citations and punctuation omitted.) *Cotton v. Bank South*, 231 Ga. App. 812, 813-814 (499 SE2d 129) (1998).

> Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full

knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract.

(Punctuation omitted.) *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 380 (436 SE2d 94) (1993).

Over a month after closing, Paden attempted to rescind the sale in a letter dated August 5, 1997. However, after moving into the house, Paden completely remodeled two sections of the roof, changing its pitch. In addition, he repainted a number of the rooms and made other additions and alterations, including installation of a termite monitoring system and replacement of the front door. These actions, in the aggregate, show that Paden intended to treat the home as his own and are indicative of Paden's affirmation of the contract, not rescission. Accordingly, the evidence supports a finding that Paden affirmed the sales contract, and his concomitant remedy is to sue the Murrays for breach of that contract.

Our Supreme Court's recent opinion in *Akins v. Couch*, 271 Ga. 276 (518 SE2d 674) (1999) does not change this result. In *Akins*, a purchaser was allowed to rescind a sales contract after securing a second security deed on the home in question. The purchaser, however, had the deed structured so that it would be canceled upon payment of the debt. Here, Paden has structurally changed the home in question, permanently altering it. This exercise of dominion over the home goes beyond that in *Akins*, which is, therefore, distinguishable from the matter at hand.

2. Paden contends that the Murrays fraudulently concealed latent defects in the home prior to its sale. As discussed in the previous division, however, Paden failed to rescind the sales agreement, and his only remedies spring from an action for breach of the contract, not for fraud.

3. Paden contends that the Murrays breached the provisions of the sales agreement by failing to disclose certain defects in the property.

Had Paden chosen to do so, the sales agreement allowed extensive rights to inspect the property. The agreement provided:

Buyer . . . shall have the right to enter the property at

> Buyer's expense and at reasonable times . . . to thoroughly inspect, examine, test, and survey the Property. . . . Buyer shall have the right to request that Seller repair defects in the Property by providing Seller within 12 days from Binding Agreement Date with a copy of inspection report(s) and a written amendment to this agreement setting forth the defects in the report which Buyer requests to be repaired and/or replaced. . . . If Buyer does not timely present the written amendment and inspection report, Buyer shall be deemed to have accepted the Property "as is" in accordance with paragraph B.

Paragraph B, in turn, provided:

> All parties agree that the Property is being sold "as is," with all faults including lead-based paints and lead-based paint hazards. The Seller shall have no obligation to make repairs to the Property (except as may be required to comply with the Termite Letter paragraph or as otherwise required herein).

Although the sales agreement included a special stipulation that the Murrays would repair a leak in a PVC pipe supplying the washing machine, no written amendment describing defects in the home was presented to the Murrays prior to closing. Therefore, with regard to those defects other than the leaky roof, which was squarely addressed by the disclosure statement, Paden waived his right to seek redress by failing to provide the Murrays with a written amendment as required by the sales agreement.

The Murrays indicated on the "Seller's Property Disclosure Statement," which was attached to the sales agreement and made a part thereof, that there had been no problems with the roof of the home, past or present. However, the record shows that, after being in their home for approximately a year, the Murrays did notice some leaks in their kitchen and their master bedroom during heavy rain storms. Mr. Murray subsequently discovered that water was being trapped by the flashing on the home, and he attempted to repair this problem. There was also evidence that an area of water damage to the ceiling of the home had been repaired. Shortly after taking over the home, Paden discovered that the roof continued to leak in the kitchen and the master bedroom. Based on the Murrays' own testimony, their disclosure with regard to the past and present condition of the roof of the home was inaccurate. Therefore, a jury must determine whether the leaks about which Paden now complains were the same ones of which the Murrays were aware when they lived in the

home. As such, Paden's breach of contract claim in this regard is not subject to summary judgment.

The same does not hold true for Paden's claim that the Murrays should have disclosed that the pitch of the roof was improper. Even if we assume that the roof was constructed with an improper slope as Paden claims, there is no evidence that the Murrays were aware of this fact, and, the disclosure statement provided that the Murrays had to disclose defects only to the best of their knowledge. As such, Paden's claim in this regard must fail.

In addition, Paden's claims regarding the home's wooden foundation, tainted water supply, electrical problems, termite infestation, and bat infestation must also fail. There is no evidence in the record that the Murrays were aware of termite infestation, and, as such, they could not have disclosed its existence. Moreover, the Murrays had a termite prevention contract on the property which Paden assumed at the time of purchase. With regard to the water supply, reports were provided at closing which showed that the water was not polluted. Finally, with regard to the existence of a wooden foundation, electrical problems, and bat infestation, these defects could have easily been discerned by Paden upon a diligent inspection of the property prior to closing.

4. Paden contends that Mr. Murray should be held liable for constructing the home in a negligent manner. Mr. Murray, however, was not the builder of the home, and Paden's claim must fail. In general,

> a builder expressly or impliedly promises that he has built the house in a fit and workmanlike manner. Thus, the law imposes upon the professional builder . . . the obligation to exercise a reasonable degree of care, skill and ability, which certainly can be shown as that degree of care and skill which, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession.

*Williams v. Runion*, 173 Ga. App. 54, 57 (325 SE2d 441) (1984).

Although Mr. Murray supervised and contacted subcontractors, he performed no actual work on the home during its construction and was not its builder. The evidence supports the trial court's finding that Jay Sanders, a building contractor for over ten years, was the builder of the home. The mere fact that Mr. Murray is a civil engineer with some knowledge of home construction does not change this result. Moreover, Mr. Murray was not solely responsible for alterations in the original blueprint for the home. He received assistance from an associate of Larry Branch, general contractor, and from Sanders in this regard. Accordingly, Mr. Murray was not the builder

of the home, and Paden's claim regarding negligent construction lacks merit.

*Judgment affirmed in part and reversed in part. Eldridge and Barnes, JJ., concur.*

DECIDED OCTOBER 4, 1999 —
RECONSIDERATION DENIED OCTOBER 21, 1999 —

*Cornelison & Van Gelderen, Leon Van Gelderen, John A. Ziolo,* for appellant.

· *Hall, Bloch, Garland & Meyer, Benjamin M. Garland*, for appellees.