A01A1898. AINSWORTH et al. v. PERREAULT et al.
(563 SE2d 135)

MIKELL, Judge.

Scott and Lori Ainsworth ("plaintiffs") filed this action against William and Barbara Perreault ("defendants") alleging fraud and breach of contract claims. The case arose from plaintiffs' purchase of defendants' home in January 1996. Plaintiffs claim that defendants misrepresented material facts about the swimming pool, concealed material defects of the pool, and breached the contract by failing to transfer the warranty on the pool. The court granted defendants' motion for summary judgment, concluding that the alleged misrepresentations were made outside the contract; that defendants had no affirmative duty to disclose prior repairs to the pool, as the defects did not exist at the time of the closing; and that defendants did not breach the contract by failing to transfer a nontransferable warranty on the pool. This appeal followed. We affirm.

The record shows that defendants hired Atlas Pools ("Atlas") to construct a vinyl liner swimming pool at their home in 1989. The contract between defendants and Atlas contained a limited warranty provision in which Atlas warranted that the pool would remain structurally sound for the period of time the pool was owned by defendants. The contract further stated that the warranty would become void "if there was a transfer or change of ownership of the real property on which the pool is located."

In 1994, there was a rupture in the bottom of the pool. Atlas performed the necessary repairs, after defendants hired a structural engineer to make recommendations. For the purpose of providing additional support, rebar was placed in the deep end, and concrete pillars were constructed under the floor of the pool. After the repairs were completed, defendants had no further problems with the pool.

Plaintiffs contracted with defendants to purchase the home in December 1995, and the sale closed on January 16, 1996. The Purchase and Sale Agreement (the "Agreement") provided that certain transferable warranties on the home would be transferred to plaintiffs. The Agreement also contained a merger clause that pro-

vided that "[n]o representation, promise or inducement not included in this Agreement shall be binding upon any party hereto."

A pool inspector hired by plaintiffs concluded that the pool was in good condition prior to the closing. In the spring of 1996, several months after the closing, plaintiffs learned of the past repairs to the pool through conversation with a landscape professional. Defendants and Atlas later confirmed that the repairs had been made. Atlas also informed plaintiffs that the lifetime warranty on the pool had not been transferred after the sale of the home.

A year and one-half later, in the fall of 1997, plaintiffs observed that the northwest corner of the pool was settling. Plaintiffs hired a geotechnical engineer who concluded in June 1998 that the pool was constructed on weak, uncompacted fill with significant organic content, that the northwest corner had settled approximately two to three inches, and that a quarter-inch-wide crack had developed. The engineer further reported that the soil under the pool's retaining wall foundation had been disturbed by the large volume of water that escaped from the pool in the past, creating a subsurface cavity and resulting in settlement and cracking of the structure. Plaintiffs did not undertake any repair work on the pool.

In September 1998, plaintiffs sent a letter to defendants offering to rescind the sale of the home. Defendants refused, and plaintiffs filed the present action on March 5, 1999, seeking damages for fraud and breach of contract. The court granted defendants' motion for summary judgment, and this appeal followed.

It is well settled that summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. Plaintiffs first argue that the court erred in granting summary judgment to defendants on the fraud claim based on wilful misrepresentations by the defendants. We disagree.

In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud. *Paden v. Murray*, 240 Ga. App. 487, 488 (1) (523 SE2d 75) (1999); *Estate of Sam Farkas, Inc. v. Clark*, 238 Ga. App. 115, 117 (1) (517 SE2d 826) (1999); *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74 (441 SE2d 421) (1994). In this case, plaintiffs offered to rescind the Agreement in September 1998, and defendants refused. The complaint subsequently filed by plaintiffs alleges fraud and breach of contract, but it does not include a claim for rescission.

Therefore, it is apparent that plaintiffs have elected to affirm the Agreement and seek damages arising from the alleged fraud and breach of contract. See *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 145-147 (3) (524 SE2d 790) (1999).

However, plaintiffs' fraud claim alleging wilful misrepresentation must fail. "[W]hen a home buyer elects to affirm a purchase agreement which contains a merger or entire agreement clause, he or she is precluded from recovering for the seller's alleged fraudulent inducement based on misrepresentations made outside the contract." *Herman Homes, Inc. v. Smith*, 249 Ga. App. 131, 132 (1) (547 SE2d 591) (2001). It is undisputed that the contract at issue contained a merger or "entire agreement" clause, which provided: "This Agreement constitutes the sole and entire agreement between the parties hereto and no modification of this Agreement shall be binding unless signed by all parties to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto." Therefore, the plaintiffs are estopped from arguing that they relied on representations other than those contained in the contract. See *Clark*, supra at 118 (1). Stated another way, the entire agreement clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement." (Punctuation omitted.) *Herman Homes, Inc.*, supra at 133 (1), citing *Clark*, supra at 118.

Plaintiffs argue that defendants committed fraud by failing to disclose the rupture in the bottom of the pool and the subsequent repairs to the pool in the property disclosure statement on which plaintiffs relied in deciding to purchase the home. However, contrary to plaintiffs' argument, there is no evidence that the property disclosure statement was incorporated into the Agreement. Compare *Paden*, supra at 490-491 (seller's property disclosure statement was attached to the sales agreement and made a part thereof).

As in *Paden*, there is some evidence in this record from which it might be inferred that the disclosure statement was attached to the Agreement. The plaintiffs point to deposition testimony to argue that one of the two sellers, Mr. Perreault, admitted that the disclosure statement was "part of the contract." The precise testimony was as follows:

Q: I'm going to hand you Plaintiffs' Exhibit P-30 and ask if this is the contract and the signatures on the contract which represent some of the signatures are yours and initials are yours on this contract document?
A: I would say so.
Q: Now, going back seven pages into that document, if you will, there's a seller's property disclosure statement. Can

you turn to that document. This is titled a seller's property disclosure statement, is it not?

A: (Witness nods head affirmatively.)

Plaintiffs' Exhibit P-30 to the Perreault deposition was filed with this Court as a supplemental record. It contains 17 pages including some duplicate pages and a photocopy of the check for the earnest money. Assuming that these were the pieces of paper handed by the attorney to the witness, and giving the party opposed to the motion for summary judgment the benefit of every reasonable inference, the witness's condition answer (i.e., "I would say so") to the attorney's question is enough to raise an issue of fact as to whether the disclosure agreement was attached to the Agreement.

But the *Paden,* supra, precedent and other cases involving merger clauses require not merely that the disclosure statement be attached to the contract but that it be "made a part thereof," i.e., incorporated into the contract. The plaintiffs argue that Paragraph 4 of the Agreement supports an inference that the disclosure statement was part of the contract. Paragraph 4 states, inter alia:

4. *Condition of Property*

. . .

D. Seller's Disclosure: [Buyer must initial either subparagraph (1) or (2) below; the uninitialed subparagraph is not part of this Agreement.] The Seller's Property Disclosure Statement:

(1) Has not been received by Buyer. . . .

— OR —

(2) Has been received by Buyer.

The initials of the buyers appear in the box next to the second option, providing that the seller's disclosure statement had been received by the buyers.[1] This evidence at most supports an inference that the second subparagraph is an enforceable part of the Agreement. But the thing that is thus made a part of the contract is the acknowledgment of receipt, not the document received. An intention by the parties to incorporate the disclosure statement into the Agreement would have been manifest if the scrivener had listed the disclosure statement in Paragraph 22. That paragraph, entitled "Exhibits and Addenda," says that "the following exhibits and/or addenda are attached hereto and by reference made a part hereof." Paragraph 22 then expressly

---

[1] The initials of the buyers and sellers also appear at the bottom of the page.

lists the Agency Agreement and Bill of Sale. The paragraph does not list the disclosure statement.

Plaintiffs also contend that defendants made certain oral misrepresentations concerning the condition of the pool; however, reliance on those alleged misrepresentations is barred by the merger clause as well. *Clark*, supra.

The plaintiffs' reliance on *Wilhite v. Mays*, 239 Ga. 31 (235 SE2d 532) (1977), in connection with their allegations of fraudulent misrepresentation is misplaced. As we recently noted in *Herman Homes, Inc.*, supra, the Supreme Court's holding in *Wilhite* does not affect the outcome of cases involving purchase agreements that contain merger clauses.

> [In *Wilhite*, supra,] the Supreme Court affirmed the rule that [when] a seller passively conceals a latent defect in the property, and the buyer is induced to enter the purchase agreement by such fraud, the buyer is not bound by the general rule of caveat emptor, but may instead elect to rescind the contract or affirm the contract and sue for damages resulting from the fraud. The issue of whether a merger clause in the purchase agreement would prevent such recovery for fraud was not before the Court, and the Court's opinion did not purport to address this issue.

(Footnote omitted.) *Herman Homes, Inc.*, supra at 133 (1).

Furthermore, recent decisions of this Court mandate that a merger or entire agreement clause bars purchasers "from asserting reliance on the alleged misrepresentation not contained within the contract." (Punctuation omitted.) *Pennington v. Braxley*, 224 Ga. App. 344, 346 (1) (480 SE2d 357) (1997), citing *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 524 (448 SE2d 271) (1994). See also *Herman Homes, Inc.*, supra at 132 (1). "Therefore, any fraud claim the purchaser might assert would be barred because reliance is an element essential to establishing fraud." *Clark*, supra at 118 (1).

Accordingly, the trial court did not err in granting summary judgment to the defendants on plaintiffs' fraud claim.

2. Plaintiffs also contend that the trial court erred in rejecting their allegations of active and passive concealment of material defects in the pool as a basis for their fraud claim. Again, we disagree and affirm the trial court's grant of summary judgment to the defendants.

In addition to wilful misrepresentation,

> [f]raud in the sale of real estate may be predicated upon . . . active concealment where the seller does not discuss the

defect but takes steps to prevent its discovery by the purchaser; and . . . passive concealment where the seller does nothing to prevent the discovery but simply keeps quiet about a defect which though not readily discernible, is known to the seller.

*Holloman*, supra at 143 (2).

We conclude that the trial court properly found that plaintiffs could not maintain their fraud claim based on active or passive concealment of defects in the pool. In both active and passive concealment, the seller must know of the defect the buyer claims was concealed. *Hoffman v. Fletcher*, 244 Ga. App. 506, 508 (2) (535 SE2d 849) (2000). Mr. Perreault testified that in his opinion Atlas adequately repaired the defects in the pool; that he was "extremely pleased" with the repair work; and that his family enjoyed the pool without problems during the time between the completion of the repairs in 1994 and the sale of the home in 1996. "There [was] no evidence to suggest that the [defendants] had any knowledge that repairs had been ineffectual, and, thus, they did not knowingly conceal any defects from [the plaintiffs]." Id. at 509 (2).

Plaintiffs' reliance on *Southern v. Floyd*, 89 Ga. App. 602 (80 SE2d 490) (1954), is misplaced. Plaintiffs are correct that *Southern*, supra, requires a seller to reveal concealed defects in property being sold; however, that case is factually distinguishable from the case sub judice. In *Southern*, the buyers alleged that the seller of a house actively concealed a broken component in the furnace that rendered it unable to heat the home at all. Id. at 603 (3). In this case, the plaintiffs allege that the defendants did not inform them of past problems with the pool that were repaired prior to the sale of the property.

The law does not require sellers to disclose every past repair made to their homes; rather, they must inform potential buyers of current defects of which they are aware. *Hoffman*, supra. See also *Paden*, supra at 491 (3) (sellers cannot be held liable for failing to disclose termite infestation of which they were unaware); *Quill v. Newberry*, 238 Ga. App. 184, 190 (1) (518 SE2d 189) (1999) (court erred in granting summary judgment when evidence showed that seller knowingly concealed extensive termite damage).

Therefore, because the record shows that there was no defect known to the sellers at the time of the alleged concealment, the trial court properly granted summary judgment on the fraud claim.

3. In a separate error, plaintiffs contend that the trial court erred in concluding that they failed to rescind the contract in a timely manner because they were on notice of the defects in the pool in 1996 but did not offer to rescind the contract until 1998. Although plaintiffs initially offered to rescind the contract, they did not seek

rescission as a remedy in the underlying action; rather, as noted in Division 1, they elected to affirm the contract and sue for fraud and breach of contract. See *Holloman,* supra at 146-147. Therefore, we need not consider this issue, because even if the court erred in concluding that plaintiffs were not entitled to rescind the contract, it would be harmless error, because there was no claim for rescission included in the complaint. Furthermore, a grant of summary judgment must be affirmed if it is right for any reason. *Ben Farmer Realty Co.,* supra at 78.

4. Next, plaintiffs assign error to the court's grant of summary judgment to the defendants on the breach of contract claim. In their complaint, plaintiffs allege that the defendants breached the Agreement by failing to transfer the lifetime warranty on the pool. The trial court concluded that because the pool warranty was not transferable, there was no jury issue regarding breach of contract. We agree.

The Agreement provided in pertinent part that "Seller agrees to transfer to Buyer, at closing, Seller's interest in any manufacturer's warranties, service contracts, termite bond or treatment guarantee, and/or other similar warranties which by their terms may be transferrable to Buyer."

The record shows that in connection with construction of the pool on the defendants' property in 1989, Atlas warranted that the pool would remain structurally sound for the period of time it was owned by defendants. The contract between defendants and Atlas further provided that Atlas *may* issue a *new* warranty to a second owner after a complete inspection by Atlas, instructions to the new owner, and payment of an inspection fee. Finally, the contract expressly stated that the pool warranty would become void "if there was a transfer or change of ownership of the real property on which the pool is located."

Based on the contract between defendants and Atlas, the trial court properly concluded that because the pool warranty was not transferable by its terms, the defendants did not breach their agreement with plaintiffs by failing to transfer it. It is well settled that "[t]he construction of a contract is a question of law for the court." OCGA § 13-2-1. "However, where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court." (Citations and punctuation omitted.) *Clark,* supra at 119-120 (2). The Agreement was clear and certain in its terms that the defendants were required to transfer warranties "which by their terms may be transferrable." The warranty provision in the contract between Atlas and the defendants clearly provided that the pool warranty was not transferable; therefore, there was no jury issue regarding the breach

of contract claim. The trial court did not err in granting summary judgment to the defendants.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JANUARY 25, 2002 —
RECONSIDERATION DENIED MARCH 27, 2002 — ■

*Burr & Forman, John A. Howard, Wasson, Sours & Harris, Mark D. Gropp*, for appellants.

*Proctor & Chambers, Robert J. Proctor, Bradley A. Hutchins*, for appellees.