## A03A1902. BROWNING v. STOCKS et al.
### (595 SE2d 642)

ANDREWS, Presiding Judge.

After S. Allan Stocks and Gloria J. Stocks took possession of a house they bought from Dillard O. Browning, they discovered termite damage in the house. The Stockses sued Browning alleging he fraudulently induced them to buy the house by making false representations about the condition of the house and by actively and passively concealing the damage. A jury returned a verdict in favor of the Stockses for damages on the fraud claim and Browning appeals. Because there was evidence at trial that Browning defrauded the Stockses by concealing the damage, we affirm.

1. We find no merit in Browning's argument that there was a lack of evidence to support the fraud verdict. In claiming that Browning fraudulently induced them to enter into the sales contract to purchase the house, the Stockses elected to affirm the contract and to sue in tort for the fraud to recover damages for the difference between the value of the house sold to them with the unrevealed termite damage and the value the house would have had absent the damage. *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74-75 (441 SE2d 421) (1994).[1] Because the Stockses elected to affirm the sales contract and pursue the coexisting right to sue in tort for the fraud, they were bound by the terms of the contract and subject to contractual defenses asserted by Browning in the fraud claim. Id.; *Tuttle v. Stovall*, 134 Ga. 325, 328-329 (67 SE 806) (1910). The sales contract contained an "entire agreement" clause which provided that the contract "constitutes the sole and entire agreement between the parties" and "[n]o representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto." Accordingly, Browning correctly asserted that the Stockses were estopped from claiming he fraudulently induced them to enter into the contract by misrepresentations about the house made outside the contract. *Ains-*

---

[1] The Stockses' alternative remedy would have been to promptly rescind the sales contract after discovering the fraud, offer to restore the benefits received, and sue in tort for recovery of the purchase price and any other damages caused by the fraud. *Ben Farmer*, 212 Ga. App. at 74-75.

*worth v. Perreault*, 254 Ga. App. 470, 472, 474 (563 SE2d 135) (2002); *Conway v. Romarion*, 252 Ga. App. 528, 532 (557 SE2d 54) (2001). In the absence of any claim that the fraud arose from representations which were part of the sales contract (id.), the Stockses' suit for damages was necessarily based on their claim that Browning fraudulently induced them to enter into the sales contract by actively or passively concealing the termite damage.

In addition to alleging misrepresentations, fraud in the sale of real estate may be predicated on claims of fraudulent concealment. *Wilhite v. Mays*, 140 Ga. App. 816, 817 (232 SE2d 141) (1976). Fraudulent concealment of a defect to induce a sale may consist of active concealment, where the seller who knows of the defect takes active steps to conceal it and prevent the buyer from discovering it, or passive concealment, where the seller who knows of the defect does nothing to prevent the buyer from discovering it but simply keeps quiet about it.[2] *Mulkey v. Waggoner*, 177 Ga. App. 165, 166 (338 SE2d 755) (1985); *Ben Farmer*, 212 Ga. App. at 75-76. In support of these claims, the Stockses presented evidence that Browning bought the house after it had been 90 percent gutted by fire, and that acting as his own general contractor, he rebuilt the house and occupied it as his residence from March 1992 until the September 1995 sale at issue. In addition to the house at issue, Browning owned over 50 rental properties and had bought and restored dozens of houses. During the three and a half years he lived in the house prior to the sale, Browning or his employees performed yearly maintenance work on the house. According to Browning, "Every spring, around February, we would go in and do, like you say, spring cleaning, painting, fixing up. I have people, you know, that work for me full time, and we'd always send people around to do this or do that. Anything that needed to be done to make it real nice."

Prior to the closing, the Stockses walked through the house on several occasions, a professional house inspector hired by the Stockses inspected the house, and a pest control company inspected the house for termite damage. None of these inspections discovered any termite damage. About three months after the sale, the Stockses saw swarming termites in the house and began to investigate further. They discovered termite damage to wood that, on the surface, looked to be in good shape. A contractor hired by the Stockses to conduct a closer inspection discovered extensive termite damage to wood areas which had been covered up with putty and fresh paint. The professional house inspector hired by the Stockses, who found no

---

[2] The "passive concealment" doctrine, applied to controversies between residential homeowners and residential builder/sellers, was created as an exception to the doctrine of caveat emptor. *Condon v. Kunse*, 208 Ga. App. 856, 858 (432 SE2d 266) (1993).

problems with the house prior to the closing, was called back to examine the termite-damaged areas. He found that putty had been used to conceal holes and gaps in the wood and concluded that he did not find the damage because of the concealment. An entomologist hired by the Stockses to look at the damage concluded it was termite damage that took at least two years to accumulate. Although Browning denied any knowledge of termite damage, the evidence was sufficient for the jury to find that Browning defrauded the Stockses because he knew of the termite damage to the house at the time of the sale; that he either actively or passively concealed it from the Stockses; that the damage was unknown to the Stockses at the sale; and that the damage could not have been discovered by the Stockses prior to the sale by the exercise of due diligence. *Southern v. Floyd*, 89 Ga. App. 602 (80 SE2d 490) (1954); *Wilhite v. Mays*, 239 Ga. 31-32 (235 SE2d 532) (1977).

2. Despite the above evidence, Browning claims that the Stockses were precluded, as a matter of law, from recovering on their fraud claim because they elected to affirm rather than rescind the sales contract, and because the entire agreement clause in the sales contract precluded the claim. In support of this argument Browning cites *Paden v. Murray*, 240 Ga. App. 487 (523 SE2d 75) (1999), where we found that Paden's fraud claim based on a concealed defect in a house failed because he elected to affirm rather than rescind the sales contract. "Paden failed to rescind the sales agreement, and his only remedies spring from an action for breach of the contract, not for fraud." Id. at 489. To conclude that affirming the sales contract precludes an action for fraud is contrary to the holding in *Tuttle*, 134 Ga. 325; *Wilhite*, 239 Ga. 31; *Ben Farmer*, 212 Ga. App. 74; *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 145-146 (524 SE2d 790) (1999), and numerous other cases which recognize that a buyer claiming he was fraudulently induced to enter into a sales contract has remedies which include the right to rescind the contract and sue in tort to recover the purchase price, or to affirm the contract, retain the benefits thereunder, and bring an action in tort for fraud to recover the difference between the amount paid and what the property was actually worth.

The above quote from *Paden* is apparently based on a general rule applicable to *misrepresentation* claims, which *Paden* applies to preclude a claim based on fraudulent *concealment*. The general rules state that:

> [T]raditionally two actions have been available to a buyer in which to sue a seller for alleged misrepresentation in the sale. The buyer could affirm the contract and sue in contract

for breach or he could seek to rescind the contract and sue in tort for alleged fraud and deceit.

*City Dodge, Inc. v. Gardner*, 232 Ga. 766, 768 (208 SE2d 794) (1974). But as *Tuttle v. Stovall*, supra, makes clear, affirming the sales contract does not eliminate a tort claim by the buyer that the sale was fraudulently induced.

A suit for damages by the defrauded party for the fraud committed is not a suit for the violation of the contract, but is one for a tort and involves affirmance of the contract. . . . It can not be said that merely affirming the contract by the defrauded party will necessarily deprive him of the right to sue for damages for the fraud inducing him to make the contract, as the right to affirm the contract and the right to sue for damages for the fraud coexist.

Id. at 329. Moreover there are differences between claims based on misrepresentations and those based on fraudulent concealment. When a buyer claims the seller made oral or written misrepresentations outside the sales contract to induce the sale, and elects to affirm the sales contract and sue, the same contractual defenses apply whether the suit is brought as a breach of contract or as a tort claim for fraud. In either case, because the sales contract was affirmed, the buyer is bound by the terms of the contract and subject to defenses asserted by the seller based on the contract. *Ben Farmer*, 212 Ga. App. at 74-75. Accordingly, as set forth in Division 1, supra, entire agreement clauses in affirmed sales contracts are commonly asserted as a defense by sellers to estop buyers from claiming they relied on misrepresentations made outside the contract. *Ainsworth*, 254 Ga. App. at 472. On the other hand, where a buyer affirms the sales contract and sues claiming, not that the seller made extracontractual oral or written misrepresentations about the purchased property, but that the seller actively or passively concealed damage or defects in the purchased property, there is no basis for using an entire agreement clause in the sales contract as a defense to the suit. *Southern*, 89 Ga. App. 602; *Hester v. Wilson*, 117 Ga. App. 435, 439 (160 SE2d 859) (1968); *Batey v. Stone*, 127 Ga. App. 81-82 (192 SE2d 528) (1972).[3] It follows that the Stockses were entitled to affirm the

---

[3] The basis for the entire agreement or merger clause defense is that "prior or contemporaneous representations [made outside the contract] that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral [or written] agreement amount to actionable fraud." (Punctuation omitted.) *First Data Pos, Inc. v. Willis*, 273 Ga. 792, 795 (546 SE2d 781) (2001). In other words, where the written contract contains

sales contract and sue in tort for fraudulent concealment, despite the existence of an entire agreement clause in the contract. To the extent *Paden v. Murray*, supra, holds that the fraud claim was precluded because the Stockses affirmed the sales contract, it is overruled.

3. Browning claims the trial court erred by denying his motion in limine to exclude evidence of a separate "Property Disclosure Statement" he gave prior to the closing, in which he stated that he was not aware of any damage due to termites or structural defects in the house. The property disclosure statement was not made a part of the sales contract, so it was subject to the entire agreement clause in the contract and could not form the basis for a suit by the Stockses that they were fraudulently induced to enter into the contract by misrepresentations in the statement. *Ainsworth*, 254 Ga. App. at 472-474. Nevertheless, the statement was properly admitted into evidence because it was relevant to the Stockses' claim that Browning fraudulently induced the sale by actively concealing the termite damage. Browning's denial of knowledge concerning termite damage in the statement was contemporaneous with the evidence of active concealment supporting the Stockses' fraud claim. Therefore, the jury could infer that it was part of a pattern of deception and provided support for the Stockses' contention that Browning knowingly engaged in the paint and putty coverup of the termite damage. *Lively v. Garnick*, 160 Ga. App. 591, 592 (287 SE2d 553) (1981). In any event, the statement on its face was consistent with Browning's defense — that he had no knowledge of the termite damage and did not knowingly conceal it.

4. Browning contends the trial court erred by excluding evidence of monetary settlements the Stockses received on separate claims they made against the professional home inspector and the pest control company, who inspected the house prior to the closing and failed to detect the termite damage. The trial court granted the Stockses' pre-trial motion in limine to exclude evidence of the settlements, but deducted the settlement amounts from the judgment. At trial, the trial court again ruled that Browning's attorney would not be allowed to present evidence "that [the Stockses] had settled and been paid money in their claims."

Browning argues that he should have been allowed to introduce evidence of the monetary settlements to show that the Stockses did not rely on his representations that there was no termite damage; rather, they relied on the pre-closing inspections by the home inspec-

---

an entire agreement or merger clause, all prior or contemporaneous negotiations, understandings, or agreements on the same subject are merged into the final written contract and extinguished. Id. Accordingly, Browning cannot rely on the entire agreement or merger clause in the sales contract to avoid the Stockses' claims that he fraudulently concealed the termite damage with putty and paint.

tor and the pest service that failed to discover the termite damage. First, the Stockses' suit was not based on a claim that they relied on Browning's representations, but on the claim that he defrauded them by actively or passively concealing the termite damage. Second, the trial court's ruling excluding evidence of the monetary settlements did not prevent Browning from showing reliance by the fact that the Stockses made claims against the home inspector and pest service. Browning also contends that he should have been allowed to show the monetary settlements to impeach the Stockses' testimony at trial that the home and pest inspectors were not negligent but were deceived by concealment efforts. Again, the trial court's ruling did not prevent Browning from showing that the Stockses thought the pre-closing inspectors were negligent because they made claims against them. Even assuming additional evidence of the settlement of the claims had some marginal relevancy, the trial court did not abuse its discretion to exclude the evidence to avoid possible jury confusion on the issue of Browning's liability. See *Allison v. Patel*, 211 Ga. App. 376, 381-383 (438 SE2d 920) (1993).

5. Finally, there is no merit to Browning's claim that the judgment entered on the jury verdict should be reversed because the trial court erred by denying his pre-trial motions for summary judgment. After a jury trial, we review the issues considering all the evidence presented at trial. *DI Uniform Svcs. v. United Water Unlimited Atlanta*, 254 Ga. App. 317, 318 (562 SE2d 260) (2002). As set forth in Division 1, supra, the evidence was sufficient to support the jury's verdict. Id.

*Judgment affirmed. Smith, C. J., Johnson, P. J., Blackburn, P. J., Ruffin, P. J., Eldridge, Barnes, Miller, Ellington, Phipps, Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 24, 2004.

*Daniel & Lowe, Robert J. Lowe, Jr.*, for appellant.
*Kilpatrick Stockton, Joseph H. Huff*, for appellees.