A06A0590, A06A0591. DICKEY v. CLIPPER PETROLEUM, INC.;
and vice versa.
(634 SE2d 425)

PHIPPS, Judge.

Jerry Dickey entered into an exclusive ten-year agreement with Clipper Petroleum, Inc. (Clipper) to supply his new service station with gasoline. After Dickey stopped ordering his gasoline from Clipper, the latter sued to enforce the agreement. A jury later awarded Clipper nearly $280,000 in damages and litigation costs. In Case No. A06A0590, Dickey appeals, arguing that the trial court erred when it denied his motion to transfer the case to the county where his service station was located, when it refused to allow the jury to consider his

---

counterclaim for fraud, and when it excluded expert testimony regarding his damages. In Case No. A06A0591, Clipper cross-appeals, arguing that the trial court should have granted a directed verdict as to damages due under the agreement and that there was no evidence to support the amount of damages awarded by the jury. We find no error and affirm in both cases.

Viewed in the light most favorable to the jury's verdict, the record shows that on October 1, 1998, after some months of negotiations, Dickey and Clipper entered into an agreement whereby Clipper, whose offices were located in Gainesville, Hall County, would install underground storage tanks and other monitoring and dispensing equipment at Dickey's new Amoco service station, located in Blairsville, Union County, and would be its exclusive supplier of gasoline for a period of ten years. Clipper installed the tanks and equipment, and Dickey opened the service station in March 1999, calling in data every day to Clipper's offices concerning the station's supply needs. When Dickey had some trouble making payments, the parties agreed that Dickey would make them twice a week directly into Clipper's account set up for that purpose at a bank branch located in Union County. After further disputes concerning delivery and payment, Dickey stopped ordering fuel from Clipper, obtaining and selling unbranded fuel instead. Clipper then sued Dickey in Hall County, seeking specific performance of the supply contract, liquidated damages, and an injunction to allow it to remove the underground storage tanks it had installed. Dickey answered, counterclaimed for breach of contract, fraud, and other wrongs, and asserted third-party complaints against Clipper's president and others. Dickey dismissed the third-party complaints without prejudice shortly before trial.

Having raised the defense of improper venue in his answer, Dickey moved to transfer venue to Union County. The trial court denied the motion to transfer. Before trial, Dickey was granted summary judgment on the issue of his ownership of the underground storage tanks. At the close of evidence, Clipper moved for a directed verdict as to Dickey's breach of contract and as to damages in accordance with the contract's liquidated damages provision. After the trial court denied Clipper's motion, the jury found for Clipper in the amount of $162,000 plus nearly $118,000 in attorney fees and costs, and the trial court entered judgment accordingly.

*Case No. A06A0590*

1. Because Dickey is a North Carolina resident, we turn to Georgia's long-arm statute to decide whether venue was proper in Hall County.

As enacted in 1966, the predecessor to OCGA § 9-10-93 provided that "[v]enue in cases under this article shall lie in any county wherein the business was transacted, the tortious act, omission, or injury occurred, or the real property is located."[1] Cases construing this version of the statute held that "[a]s long as there is evidence that a significant part of the occurrence giving rise to jurisdiction took place in a [particular] county[,] the statutory [venue] requirement is met even though there may be also other counties where other significant conduct transpired."[2] In 1997, the legislature codified a similarly expansive definition of "transacted business" by amending the statute so as to make venue lie "in any county wherein *a substantial part of the business* was transacted."[3] Where, as here, the trial court serves as the trier of fact on the issue of venue, its decision will be reversed only if "the evidence demands a contrary finding."[4]

The supply agreement at issue here was the fruit of discussion and negotiation lasting some months. Throughout their relationship under that agreement, Dickey transmitted data on a daily basis concerning his gasoline supply needs from his Union County service station to Clipper's office in Hall County. As a result of these transmissions, Clipper ordered its transport company to deliver gasoline to Union County. At the outset of the contract period, Dickey sent payments to Clipper's office, although he later transmitted payments directly into a Union County bank account set up for that purpose. Since substantial parts of the business arising from the parties' agreement were transacted in both counties, we have no basis for reversing the trial court's factual determination that venue lay in Hall County.[5]

2. Dickey next argues that the trial court erred when it granted Clipper's motion in limine as to his counterclaim for fraud, a ruling which had the effect of taking the issue away from the jury. We disagree.

---

[1] See Ga. L. 1966, p. 343, § 4; see also Ga. L. 1968, p. 1419, § 1; Ga. L. 1970, p. 443, § 3.

[2] *Evers v. Money Masters,* 203 Ga. App. 546, 548 (3) (417 SE2d 160) (1992) (citation and punctuation omitted).

[3] OCGA § 9-10-93; Ga. L. 1997, p. 480, § 1 (emphasis supplied).

[4] *Cooper v. Edwards,* 235 Ga. App. 48, 49 (508 SE2d 708) (1998) (citations omitted).

[5] See OCGA § 9-10-93; *Evers, supra,* 203 Ga. App. at 548 (venue lies in county in which nonresident defendants presented checks to plaintiff); *Unger v. Bryant Equip. &c.,* 255 Ga. 53, 54-55 (2) (335 SE2d 109) (1985) (Wyoming manufacturer "transacted business" for purposes of OCGA § 9-10-93 in customer's home county when it accepted payment for equipment delivered there by its distributor); see also *Innovative Clinical &c. v. First Nat. Bank of Iowa,* 279 Ga. 672, 675-676 (620 SE2d 352) (2005) (postal and telephonic contacts may suffice to create personal jurisdiction over nonresident corporation under the "transacting any business" standard of OCGA § 9-10-91 (1)).

In his counterclaim, Dickey asserted that Clipper fraudulently induced him to sign the contract by pretending that it would abide by that contract, and that when Clipper entered into the contract, it intended to extort him into granting it different and more favorable terms by withholding gasoline supplies. Clipper argues that these allegations amount to an assertion of fraud in the inducement, which claim is barred by Dickey's decision to affirm the contract, including its "entire agreement" clause, rather than to rescind it.

> [W]hen a buyer claims the seller made oral or written misrepresentations outside the sales contract to induce the sale, and elects to affirm the sales contract and sue, the same contractual defenses apply whether the suit is brought as a breach of contract or as a tort claim for fraud. In either case, because the sales contract was affirmed, the buyer is bound by the terms of the contract and subject to defenses asserted by the seller based on the contract.[6]

Here, Dickey affirmed the agreement when he asked the trial court to grant him partial summary judgment on the issue of his ownership of the underground storage tanks on the ground that "the clear and unambiguous terms of the [agreement] should be enforced." Nor has Dickey alleged, let alone proven, that Clipper fraudulently concealed some defective condition in the gasoline or the equipment for storing or dispensing it.[7]

Dickey urges nonetheless that Clipper perpetrated the fraud when it signed the contract without any intention of honoring its terms and promises. While "[a]ctionable fraud does not result from a mere failure to perform promises made," it can occur "when a party enters into a contract with no present intention of performing his promises."[8] Here, however, Dickey failed to proffer any specific evidence that Clipper did not intend to perform its obligations under the supply agreement when the parties signed the contract. In support of this argument on appeal, moreover, Dickey cites only pleadings, legal argument, and a general objection to the absence of a charge on fraud on the ground that the same body of evidence proving Clipper's breach of contract also proved its fraud. "[I]t is the

---

[6] *Browning v. Stocks*, 265 Ga. App. 803, 806 (2) (595 SE2d 642) (2004) (citation omitted).

[7] Compare id. (claim of fraudulent concealment not barred by affirmation of contract, including entire agreement clause).

[8] *Brock v. King*, 279 Ga. App. 335, 339 (2) (629 SE2d 829) (2006); see also *Chhina Family Partnership v. S-K Group of Motels*, 275 Ga. App. 811, 812-813 (2) (622 SE2d 40) (2005) (even when contract contains merger clause, jury could address fraud claim because there was evidence that contract contained misrepresentations of fact).

obligation of a party to make a specific tender of evidence which they contend is improperly excluded, and the failure to do so precludes our review of this contention."[9] Likewise, we will not cull the record on Dickey's behalf in search of error.[10] Thus we conclude that Dickey has failed to show either that the trial court erred when it granted Clipper's motion in limine on his fraud counterclaim or that he was harmed by that ruling.[11]

3. Finally, Dickey argues that the trial court erred when it granted Clipper's motion in limine as to testimony by a real estate appraiser concerning a decline in the service station's value after the breakdown of the supply agreement. Again, we disagree.

We will not reverse a trial court's decision whether a witness is qualified to testify as an expert on a particular topic absent a manifest abuse of discretion.[12]

Here, Dickey proffered testimony by the real estate appraiser to the effect that his valuation of Dickey's service station property included "a little over a million dollars" in lost profits. But another of Dickey's expert witnesses testified on this subject, and the jury ultimately rejected Dickey's counterclaim for breach of contract. Thus we cannot say that the trial court abused its discretion when it excluded the real estate appraiser's testimony or that Dickey suffered harm as a result of that decision.[13]

## Case No. A06A0591

4. A trial court may not grant a motion for directed verdict based on a failure of proof of damages unless there is "a complete absence of any competent evidence on this issue."[14] A trial court's approval of a jury verdict as to damages, moreover, "creates a presumption of correctness that cannot be disturbed on appeal absent compelling evidence," and a reviewing court is powerless to interfere "unless it is

---

[9] *Cantrell v. Northeast Ga. Med. Center*, 235 Ga. App. 365, 371 (5) (508 SE2d 716) (1998) (citations omitted).

[10] *Blackwell v. Goodwin*, 236 Ga. App. 861, 862-863 (1) (513 SE2d 542) (1999).

[11] *Cantrell*, supra (affirming exclusion of evidence where no proffer made); see also *Brock*, supra (affirming grant of directed verdict concerning contract claim when plaintiff failed to show that any provision was false on its face).

[12] *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 579-580 (1) (521 SE2d 600) (1999).

[13] See *Panos v. Dept. of Transp.*, 162 Ga. App. 53, 53-54 (2) (290 SE2d 295) (1982) (grant of motion in limine is harmless error where evidence to the same effect admitted from another source).

[14] *M. K. Developers v. McCall*, 202 Ga. App. 224, 225 (2) (414 SE2d 260) (1991) (citations and punctuation omitted).

clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means."[15]

The supply agreement at issue here contained the following provision:

Upon any breach of this Agreement, *if Supplier exercises its option to terminate this Agreement*, Purchaser shall be liable to Supplier for damages determined as follows: The product obtained by multiplying (1) the number of months remaining during the original term and each renewal term of this Agreement after the date of Purchaser['s] breach times (2) $1,800 and the unamortized cost of [certain purchased equipment].[16]

Here, Clipper's employees testified that it never terminated the agreement, seeking specific performance instead. The trial court instructed the jury on both compensatory and liquidated damages, and the jury received a verdict form asking it to determine the amount of damages to be awarded in the event that it found that Dickey had breached the contract. Clipper objected to neither the charge on damages nor the manner in which the verdict form presented the question of damages to the jury.

Because the liquidated damages provision would have been activated only by Clipper's termination of the contract, and because an issue of fact remained as to whether Clipper did so terminate, the trial court did not err when it denied Clipper's motion for a directed verdict on damages.[17] Likewise, because Clipper made no objection to the manner in which the verdict form presented the question of Clipper's damages to the jury, there is no error of law in the verdict for us to review.[18]

*Judgment affirmed in both cases. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED JUNE 23, 2006 —
RECONSIDERATION DENIED JULY 13, 2006.

---

[15] *Dept. of Human Resources v. Johnson*, 264 Ga. App. 730, 737 (592 SE2d 124) (2003) (citations and punctuation omitted); see also OCGA § 13-6-4.

[16] (Emphasis supplied.)

[17] *M. K. Developers*, supra, 202 Ga. App. at 225-226 (2) (affirming denial of directed verdict as to damages).

[18] *Bloodworth v. Bloodworth*, 277 Ga. App. 387, 389 (1) (b) (626 SE2d 589) (2006) (failure to object to general verdict form at trial waives objections on appeal).

*Caldwell & Watson, Harmon W. Caldwell, Jr., Wade H. Watson III,* for appellant.

*Mills & Moss, Steven M. Mills, Paul J. Dzikowski,* for appellee.