## A95A1142. PLOTT et al. v. CLOER.
### (464 SE2d 39)

BLACKBURN, Judge.

Appellants, Carolyn Plott (Plott), individually and as mother and next friend of Joel Plott, her minor son, and Billy Eugene Plott III, appeal the trial court's grant of summary judgment to appellee, B. C. Cloer, individually and as sole proprietor of B. C. Properties (Cloer). Plott sued for general, special, and punitive damages sustained in an incident on April 19, 1990, in the townhouse she rented from Cloer, in Tanaga Forest, a residential subdivision of individually owned duplexes, each of which is located on a public street. By amended complaint, Plott's former husband, Billy, sued for the loss of services.

Plott was viciously beaten, raped, and sodomized by an individual who was unrelated to Cloer, and who was criminally tried and convicted for his conduct. While Cloer owns most of the fee simple duplexes in the subdivision, they are rented individually and there are no common areas under Cloer's control.

On March 29, 1990, Cloer became aware that there had been break-ins in the area and promptly notified Plott of such fact by memo, received by her on March 30, 1990, which included the following language, "[w]e want to caution all of you to make sure your windows and doors are properly secured." A neighbor also warned Plott that someone had attempted to break into the neighbor's apartment early on the evening that plaintiff was raped. Approximately a week prior to the subject incident, Plott had been told by another neighbor of an attack upon a girl near the stop sign in the neighborhood on April 5, 1990. Plott's assailant entered through a second floor back bedroom window of her townhouse which she had left unsecured and open, rather than turning on the air conditioning, because it was hot upstairs. Plott was beaten, then carried into the dining room, away from her children where she was raped and sodomized by the assailant. Her children were not attacked. The window locks of her townhouse were operational, Plott had never complained of any problems with the locks and she had never complained of any failure to make repairs.

Plott alleged that Cloer was negligent in failing to provide his

Tanaga Forest tenants adequate warning or security against potential criminal attack and in failing to provide his employees the necessary training in tenant safety. The trial court granted Cloer's motion for summary judgment.

Pretermitting the issues of defendant's alleged failures, it must first be determined what duty the law imposes upon a landlord who has parted with possession and control of the property to the tenant, where there has been no liability otherwise created by contract, representations, or warranties.

1. Plott enumerates as error the trial court's grant of Cloer's motion for summary judgment as to her injuries, arguing that a proprietor has a duty to invitees to exercise ordinary care in keeping his premises safe under OCGA § 51-3-1. See *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (405 SE2d 474) (1991).

However, where, as here, " 'the owner has *fully parted with possession by rental or lease* his liabilities are measured by (OCGA § 44-7-14), (OCGA § 51-3-1) having no application. (Cits.)' *Powell v. United Oil Corp.*, 160 Ga. App. 810 (287 SE2d 667) (1982). (Emphasis supplied.) Conversely, where the owner has retained control over common areas of an apartment complex to which tenants and others are allowed access, the owner is liable under OCGA § 51-3-1 to exercise ordinary care in keeping those common areas safe. *Maloof v. Blackmon*, 105 Ga. App. 207 (4a) (124 SE2d 441) (1962)." *Lidster v. Jones*, 176 Ga. App. 392, 393 (336 SE2d 287) (1985), cert. vacated *Pine Terrace Assoc. v. Lidster*, 255 Ga. 405, 406 (341 SE2d 8) (1986).

It is uncontroverted that Cloer relinquished control of the leased premises to Plott, subject only to a right of access for inspection, repairs, emergency, or, upon the tenant's termination of the lease, to show the premises to prospective renters. Likewise, it is undisputed that Cloer fully discharged his responsibility to maintain the premises in good repair. Cloer neither employed security personnel nor represented that he provided security of any type. Plott's injuries were the result of the independent, criminal conduct of a third party which occurred within the premises over which she had complete control. Under the facts of this case, Cloer's duty to Plott was limited to those imposed under OCGA § 44-7-14, that is, a duty to ensure that the leased premises were properly constructed and maintained. Cloer owes Plott no duty under OCGA § 51-3-1, as alleged. Accordingly, the trial court did not err in granting summary judgment to Cloer. "If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial." *Lau's Corp.*, supra at 491.

2. In light of our disposition of Division 1, we do not reach Plott's remaining assignments of error.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Smith and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent. Although a landlord is not an insurer of his tenant's safety, the landlord does not become a bystander (free of accountability) simply because the tenant takes possession of the rental unit. *Warner v. Arnold*, 133 Ga. App. 174, 179 (210 SE2d 350). On the contrary, this Court has held that, if there is "some evidence" that the landlord took on responsibility for " 'looking out for the safety of the apartment premises and the residents,' there remain questions [as to] whether [the landlord] had assumed a duty to provide security for the apartment complex and whether that duty had been performed in a non-negligent manner. Cf. *Godwin v. Olshan*, 161 Ga. App. 35 (288 SE2d 850) (1982)." *Cooperwood v. Auld*, 175 Ga. App. 694, 695 (334 SE2d 22).

In the case sub judice, there is proof that B. C. Cloer took on responsibility for the safety of the rental complex at Tanaga Forest and its residents both before and after the burglary and assault of Carolyn Plott on April 19, 1990.[1] Specifically, it is undisputed that Cloer's full-time property manager, Sherry Windham, sent out a memorandum on March 30, 1990, warning Tanaga Forest residents that "[w]e had 3 apartments broken into Thursday evening, March 29."[2] Further, there is proof that Windham posted a letter to Tanaga Forest residents on April 19, 1990, acknowledging that there has been "quite a lot of disturbance in our area lately" and assuring the residents that "[w]e are doing everything possible to protect your best interests." Further, Cloer admits (in his deposition) that he employs a full-time maintenance manager at Tanaga Forest, Jimmy Fowler, "to cover all maintenance calls and requests over all the rental property"; that he compensates Fowler to reside on premises at Tanaga Forest and that, while Fowler "is not a police officer[, he] is called on occasionally to referee disputes or whatever [at the complex]." Under these circumstances, and with proof that neither Windham nor Fowler advised Cloer's tenants about a rash of crimes that had occurred in Tanaga Forest within a month before the burglary and assault upon Carolyn Plott (including two violent attacks against

---

[1] B. C. Cloer was the sole developer of Tanaga Forest, a townhouse community consisting of 78 or 80 residential units. Since development, Cloer has transferred about 25 percent of the complex to other investors, retaining approximately 58 rental units for himself.

[2] The full text of the memorandum provides as follows: "We had 3 apartments broken into Thursday evening, March 29. We want to caution all of you to make sure your windows and doors are properly secured. There have been no break in's, that we are aware of, during the daytime hours. The police are investigating this matter."

women), I believe that genuine issues of material fact remain as to "whether [Cloer] had assumed a duty to provide security for [his tenants at Tanaga Forest] and whether that duty had been performed in a non-negligent manner." *Cooperwood v. Auld*, 175 Ga. App. 694, supra.

The case sub judice should go to a jury for resolution of the genuine issues of material fact.

DECIDED NOVEMBER 22, 1995 — 

*McKinney & Salo, Jan McKinney*, for appellants.
*Chambers, Mabry, McClelland & Brooks, Genevieve L. Frazier*, for appellee.