A03A2008. HUDSON v. POLLOCK et al.
(598 SE2d 811)

MIKELL, Judge.

Frank R. Hudson filed a fraud action against Bernard and Elaine Pollock, alleging that they concealed the condition of the septic tank in the house they sold to Hudson. The Pollocks filed a motion for summary judgment, which the trial court granted. It is from this order that Hudson appeals. Because genuine issues of fact remain for a jury's determination, we reverse.

> When ruling on a motion for summary judgment, the trial court should give the party opposing the motion the benefit of all reasonable doubt and should construe the evidence and all inferences and conclusions therefrom most favorably toward that party. When appellate courts review the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and the evidence.[1]

---

[1] (Citations omitted.) *Keller v. Henderson*, 248 Ga. App. 526, 527 (1) (545 SE2d 705) (2001).

So construed, the evidence shows that on February 15, 2001, Hudson entered a real estate purchase and sale agreement with the Pollocks to purchase their home. In conjunction therewith, the Pollocks executed a Seller's Property Disclosure Statement, which was incorporated into the sales contract. The Pollocks checked the "yes" box on the disclosure statement, indicating that the septic tank had been professionally serviced and provided the date of last service as September 21, 1999. Also on the form, the Pollocks indicated that they were not aware of any past or present leaks, backups, or other similar problems relating to any of the plumbing, water and/or sewage-related items. Hudson signed and acknowledged receipt of the disclosure statement on February 16, 2001.

Hudson deposed that he had the home inspected and that his inspector reported no problems with the plumbing system in the house. Regarding the septic system, the inspector wrote in his inspection report, "Septic systems should be cleaned every 4-7 years (this system has very well drained field lines)." Hudson also talked to Bernard Pollock about the septic system. Hudson deposed that Pollock told him that the system had been serviced and was in perfect working condition and explained that a stand pipe had been installed as an extra safety device to prevent spillage into the basement of the house in the event there was ever a sewage backup. Though Hudson thought the stand pipe was "rather unusual," he believed Pollock's explanation and actually thought the stand pipe was a "pretty clever idea." Furthermore, Hudson knew that Pollock was a professional builder and was comfortable that Pollock was very good at his trade. Consequently, Hudson saw no need to have the septic tank inspected or demand that any repairs be made to it. The closing occurred on March 26, 2001. Hudson deposed that 18 days later, the septic system failed.

Hudson contacted Seagraves Plumbing ("Seagraves") about the problem and learned that it had actually repaired the system in 1999, as opposed to simply servicing it as the Pollocks had indicated on the disclosure statement. Hudson deposed that he learned from Seagraves that during the repair, a bulldozer was utilized and several pipes were replaced; that Seagraves told Pollock that the system was impaired and was going to fail; and that Pollock did not want to replace the system and asked them to patch it.

Charles Seagraves, the president of Seagraves, averred that he received a call from Pollock in September 1999, because the basement toilet was flushing slowly; that he observed some sewage backup inside the house; that his company uncovered and pumped out the tank and discovered the drain field was not working; that he told Pollock that a new field line was needed and Pollock asked him to

repair and unclog the old drain line; that they found one old, deteriorated line that they were able to use; that he told Pollock that there was no long-term guarantee to this "stop gap" measure; that Pollock insisted that they install a stand up clean out pipe to enable him to drain the system if it were to become clogged or full; that he emphasized to Pollock that they could not guarantee the effectiveness of the methods used to repair the system; and that he "made it perfectly clear to Pollock that this was not a service call but a band-aid applied to arterial bleeding."

Conversely, Pollock averred that Seagraves advised him that the system would have to be replaced at some point but that it could be serviced, extending its useful life for an indefinite period of time; that he decided to repair the system since this was the first time that it needed repair since its installation; that Seagraves recommended the installation of the stand up clean out pipe as an extra precaution against backup; and that they never had leaks, backups, overflows, odors, or any other problems with the septic tank and had no indication that it would fail shortly after they sold their home.

"To survive a motion for summary judgment on a fraud count, [Hudson must present] some evidence [to] support each of the five elements, which are: a false representation by a defendant; scienter; intention to induce the plaintiff to act or refrain from acting; justifiable reliance by plaintiff; and damage to the plaintiff."[2] "Questions of fraud, the truth and materiality of representations made by a seller, and whether the buyer could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury."[3] The evidence in the instant case is not "plain and indisputable."

1. Jury issues remain as to whether Pollock falsely represented the condition of the septic system.

> Fraud in the sale of real estate may be predicated upon a wilful misrepresentation, i.e., the seller tells a lie; upon active concealment where the seller does not discuss the defect but takes steps to prevent its discovery by the purchaser; and thirdly a passive concealment where the seller does nothing to prevent the discovery but simply keeps quiet about a defect which though not readily discernible, is known to the seller.[4]

---

[2] (Citation, punctuation and footnote omitted.) *Lanier Home Center v. Underwood*, 252 Ga. App. 745, 748 (5) (557 SE2d 76) (2001). Accord *Keller*, supra at 527 (2).

[3] (Citation and punctuation omitted.) *del Mazo v. Sanchez*, 186 Ga. App. 120, 127-128 (366 SE2d 333) (1988).

[4] (Punctuation omitted.) *Smiley v. S & J Investments*, 260 Ga. App. 493, 499-500 (3) (580

Here, Hudson maintains that Pollock wilfully misrepresented the condition of the septic system by maintaining that it was in "perfect working condition" and by indicating on the disclosure statement that he was unaware of any past or present leaks, backups, or other similar problems relating to any of the plumbing, water and/or sewage-related items.

The evidence shows that Seagraves averred that he told Pollock that the system was seriously impaired and that any repair was a temporary stop gap measure and a "band-aid applied to arterial bleeding" and that at no time did he suggest to Pollock that the system had been repaired. Conversely, Pollock averred that Seagraves told him that the system could be repaired and its useful life indefinitely extended. Thus, there is evidence from which a jury could find that Pollock knew the system was defective.

Seagraves averred that the Pollocks called him because of a slow flushing toilet and that he observed a sewage backup in the house. Thus, it could be inferred from the affidavit of Seagraves that the Pollocks must also have seen "sewage backup." Thus, jury issues exist as to that inference and as to whether this inference showed a material misrepresentation or whether a slow flushing toilet rises to the level of a "similar problem," which issues preclude the grant of summary judgment.[5]

2. "For purposes of summary judgment, scienter and intent to deceive are determined on the basis of the seller's knowledge of the falsity of his representations at the time made to the prospective purchaser."[6] As discussed above, there was evidence from which a jury could determine that Pollock knew that the system was defective and could fail at any moment. Likewise, a jury could also find that his representations that the system had been "serviced" and that it was in perfect working condition were made to deceive Hudson.

3. There was also evidence from which a jury could conclude that Hudson justifiably relied on Pollock's representations. Pollock never revealed to Hudson that he contacted Seagraves Plumbing because a toilet was flushing slowly. Instead, he maintained simply that the system had been "serviced" in 1999. Hudson deposed that he previously owned five homes that had septic systems and that one of those systems had been "serviced," meaning pumped to clear the drain

---

SE2d 283) (2003), quoting *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 143 (2) (524 SE2d 790) (1999).

[5] See *Keller*, supra at 530 (5) (summary judgment properly denied on fraud claim where seller's contention that he knew of no recurring problem with leakage in his basement was contradicted by evidence that the basement had leaked and that the seller was aware of the problem but decided not to repair it).

[6] (Citation omitted.) *Smiley*, supra at 500 (3).

field. Additionally, Hudson deposed that though he thought the stand pipe was unusual, he relied on Pollock's explanation, believed in Pollock's competence, and actually thought the stand pipe was a clever idea after Pollock explained its purpose.

4. Finally, Hudson deposed that Seagraves charged approximately $15,000 to install a new septic system; that he paid $980 to replace the irrigation system and $730 for landscaping, plus the cost of the sod, because the grass and irrigation system were destroyed during the installation of the new system. This evidence supported Hudson's claim that he was damaged. Therefore, because Hudson has presented evidence to support each element of his fraud claim, we reverse the trial court's grant of summary judgment to the Pollocks.[7]

*Judgment reversed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MARCH 29, 2004 —
RECONSIDERATION DENIED APRIL 13, 2004 — 

*Kiley & Nebl, Thomas P. Kiley*, for appellant.
*Goldner, Sommers, Scrudder & Bass, Glenn S. Bass*, for appellees.

---

[7] See *Lanier Home Center*, supra at 748 (5).