**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 6, 2014**

# In the Court of Appeals of Georgia

A13A2081. STEPHEN A. WHEAT TRUST, DATED SEPTEMBER 14, 2009 et al. v. ROBERT AB SPARKS, IV et al.

MCMILLIAN, Judge.

Stephen A. Wheat and Teresa M. McCrerey-Wheat (collectively "the Wheats"), as well as the Stephen A. Wheat Trust, Dated September 14, 2009 and Stephen A. Wheat, as Trustee (collectively "the Wheat Trust"), sued Robert Ab Sparks, IV and Louise Lackey Sparks (collectively "the Sparks") for fraud arising out of the Sparks' sale of a house to the Wheats. Following a hearing, the trial court entered judgment in favor of the Sparks, and this appeal followed. The Wheats and the Wheat Trust assert the following enumerations of error: (1) the trial court erred by granting summary judgment, as there was at least one genuine issue of material fact in dispute with regard to each element of their fraud claims; (2) the trial court erroneously held

that the Wheat Trust did not have standing; (3) the trial court incorrectly found that Mr. Wheat was not damaged; (4) the trial court wrongly applied the merger doctrine; and (5) the trial court erred by granting summary judgment on their various derivative claims.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Davis v. VCP South, LLC*, 321 Ga. App. 503, 503-504 (740 SE2d 410) (2013).

So construed, the evidence shows that on August 14, 2009, the Wheats entered into a Purchase and Sale Agreement ("Agreement") with the Sparks to purchase a residential property in the city of Decatur ("Property"). The Agreement incorporated a Seller's Property Disclosure Statement dated March 5, 2009 ("Disclosure"). The Sparks conveyed the Property to the Wheats on September 14, 2009. At closing, the Sparks also signed an Owners' Affidavit. Upon taking title, the Wheats transferred the Property via a "Quitclaim Deed Spousal" to Mrs. Wheat and the Wheat Trust.

*The Sewer Lateral Encroachment*

In Section 2(d) of the Disclosure, the Sparks represented that there were no "encroachments (known or recorded), leases, unrecorded easements, or boundary line disputes" regarding the Property. The Sparks also represented that the sewage system for the Property was public. In an addendum attached to the Disclosure, the Sparks further stated "[e]xterior sewer line replaced with PVC in 2005. All waterlines, including service line, were replaced with copper plumbing in 2006." The Owners' Affidavit further reiterated that "there are no disputes . . . concerning the encroachment of any improvements including fences, driveways, structures, [etc.] onto the property of neighbors or vice versa."

Approximately 18 months after taking possession of the Property, however, the Wheats experienced a problem with the sewer lateral[1] servicing the Property. During the process of repairing the problem, they learned that the sewer lateral extended approximately 133 feet beyond the Property, including a portion that lay under both the property of their neighbors, the Gransdens, and another piece of heavily wooded land owned by the City of Decatur. At that time, Mr. Wheat contacted Emilie

---

[1] A sewer lateral is an underground pipe that connects a house or business to a city or county sewer line.

Markert, the Sparks' real estate agent, regarding the sewer problem. In response, Ms. Markert forwarded an email to Mr. Wheat from Mr. Sparks regarding the Sparks' past troubles with the sewer lateral, including the following information: the "'only small hurdle in making the replacement was the fact that the lateral crosses the Grandsen's [sic] property.'" Mr. Sparks also sent another email to Ms. Markert indicating that one of the sewer line's "clean-outs" is on "the back corner of the Gransden property (quite near the city's tap)." In a subsequent email to Ms. Markert, Mr. Sparks confirmed that when they replaced the sewer lateral line in 2005, they "had to get permission from the next-door neighbor, Joe Gransden, to trench across the corner of his yard." The Wheats eventually reached an easement agreement with the Gransdens and the City of Decatur to resolve the encroachments between the Property and the public sewer connection.

*Basement Water Intrusion*

In Section 7(a) of the Disclosure, the Sparks affirmed that there had been water leakage, water accumulation, or dampness within the basement. The addendum attached to the Disclosure further explained, "During very heavy rains the front corner of the basement occasionally became damp. Installed French drains down sides of house to draw water downhill and away from house." While the Property was on

4

the market, however, there is evidence that the Sparks were also aware of "three major leaks" and a "minor leak" in the months after they completed their Disclosure. During that time, Ms. Sparks set up fans (including additional borrowed fans) in the basement to dry the leaks before showing the Property. Although Ms. Markert advised the Sparks to update their Disclosure to acknowledge the continued leaks, they did not do so. On April 2, 2009, Ms. Sparks stated in an email to their real estate agent:

> I think Rob or my parents mentioned the leak in the basement – we have a piece of masonry missing in the basement, causing water to come in the front right corner, Rob has found someone to fix on Monday. We've had a water issue in the basement too, near the window facing the driveway, water is coming in off the deck. Rob has asked someone else to come over on Saturday to address – hopefully we'll have this one done before the open house, and it doesn't rain any time soon! Thanks again for your fans (I set them up this am at 6:30).

However, Ms. Sparks later deposed that she did not believe they ultimately made any repairs to correct the leaks identified in her email. The Wheats visited the Property during an open house in April 2009, viewing the basement after it had been dried by the fans. After purchasing the Property, the Wheats experienced water leaks in the basement, which they undertook to repair.

5

Subsequently, on December 22, 2011, the Wheats and the Wheat Trust filed suit against the Sparks, asserting a claim for fraud based on misrepresentations as to the nature of the sewer lateral and for punitive damages and attorney fees. In their First Amended Complaint, the Wheats[2] added an additional claim for fraud based on misrepresentations and active concealment of the water intrusion. Following discovery, the Sparks filed a motion for summary judgment, which the trial court granted on April 30, 2013.

1. On appeal, the Wheats assert that the trial court erred in granting summary judgment because there is at least one genuine issue of material fact in dispute with regard to each element of their fraud claims.[3] Fraud requires proof of five elements:

_____

[2] For ease of reference, we will hereinafter refer to all four Appellants as the Wheats, except where needed for clarity.

[3] A purchaser claiming he was fraudulently induced to enter into a sales contract has an election of remedies:

> (1) promptly after discovering the fraud he may rescind the contract and sue in tort for recovery of the purchase price and for any additional damages resulting from the alleged fraud; or (2) he may affirm the contract and sue for damages resulting from the fraud. This second suit, however, is not one for breach of contract, but one in tort. As these suits involve affirmance of the contract, the defrauded party may keep the benefits of the contract and still maintain an action for damages suffered

6

(i) false representation made by the defendant, (ii) knowledge by the defendant that the representation was false when made, (iii) intent to induce plaintiff to act or refrain from acting, (iv) justifiable reliance by the plaintiff, and (v) damage to the plaintiff. See, e.g., *Keller v. Henderson*, 248 Ga. App. 526, 527 (2) (545 SE2d 705) (2001).

"Fraud in the sale of real estate may be predicated upon a wilful misrepresentation, i.e., the seller tells a lie." (Citation omitted.) *Hudson v. Pollock*, 267 Ga. App. 4, 6 (1) (598 SE2d 811) (2004). In addition, fraudulent inducement of a sale may be based on claims of fraudulent concealment where the seller, who knows of the defect, either (1) takes active steps to conceal it and prevent the buyer from discovering it or (2) passively conceals the defect by simply keeping quiet about it. See *Browning v. Stocks*, 265 Ga. App. 803, 804 (595 SE2d 642) (2004). Here, the Wheats assert fraud on the latter theory – that the Sparks concealed the fact that the

---

because of the fraud.

(Citation omitted.) *Keller*, 248 Ga. App. at 528 (2). The Wheats have elected to seek the second remedy.

sewer lateral servicing the Property encroached onto the neighboring property and the fact that the basement had multiple, continued leaks.[4]

2. As evidence of fraud regarding the encroachment of the sewer lateral, the Wheats point to the Sparks' statement in Section 2(d) of the Disclosure that there were no known encroachments, their reiteration of this fact in their Owners' Affidavit, and their silence as to the subterranean encroachment. The Sparks, on the other hand, although not disputing that the sewer lateral does run underneath the neighboring properties for approximately 133 feet, argue that because they made their disclosures based upon their understanding and personal knowledge, there was no actionable misrepresentation. Moreover, Mr. Sparks deposed that he did not disclose the encroachment to the Wheats because he "did not believe it to be material."

Based on our review of the record, we find that whether the Sparks had knowledge as to the falsity of their representation and their intention to induce the Wheats to purchase the Property are issues of fact best left to a jury. We have

---

[4] It appears from the record that the Wheats initially included an additional claim for fraud based on the Sparks' characterization of the sewer as public. However, in their briefing before this Court, the Wheats acknowledge that the sewer does eventually connect to the public sewer system. Therefore, we do not address that claim. See *Tackett v. Ga. Dept. of Corrections*, 304 Ga. App. 310, 310, n. 1 (696 SE2d 359) (2010).

8

frequently cautioned that "[q]uestions of fraud, the truth and materiality of representations made by a seller, and whether the buyer could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury." (Citation and punctuation omitted.) *Hudson*, 267 Ga. App. at 6; see also *Fed. Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 243 (590 SE2d 224) (2003) (circumstantial evidence is usually required to prove fraud and "[e]xcept in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination") (citation and punctuation omitted.).

In support of their motion for summary judgment, Mr. Sparks submitted an affidavit showing that when they purchased the Property in 2004 from the previous owners, the seller's disclosure statement likewise did not disclose any encroachment. However, we are not persuaded that the Sparks' knowledge in 2004 regarding the sewer lateral encroachment is relevant to whether the Sparks knowingly made a false representation at the time that they induced the Wheats to purchase the Property in 2009. "For purposes of summary judgment, scienter and intent to deceive are determined on the basis of the seller's knowledge of the falsity of his representations at the time made to the prospective purchaser." (Citation and punctuation omitted.) *Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 82 (663 SE2d 779) (2008). More

9

significantly, there is evidence in the record to support the Wheats' assertion that the Sparks did in fact know of the encroachment as early as 2005, including admissions from Mr. Sparks that when they replaced the sewer lateral line in 2005, they had to get permission from their neighbors to trench across the corner of their yard.

The Sparks also argue that the Wheats were put on notice as to the previous problems with the sewer system, yet failed to exercise due diligence and therefore cannot prove justifiable reliance. The Wheats, however, point out that the sewer line servicing the property was subterranean and the encroachment of that line onto the neighboring properties was not something that they could have discovered through their own investigation until they were forced to excavate in 2011. Again, we find that the question of whether the Wheats justifiably relied on the Disclosure and the Sparks' silence as to the encroachment is a question of fact for the jury. See *Akins v. Couch*, 271 Ga. 276 (518 SE2d 674) (1999) (jury is authorized to find a purchaser exercised due diligence even without checking publicly available records; therefore, the issue of whether the purchaser exercised reasonable diligence was a question for the jury). Because the Wheats have established that genuine issues of material fact remain with respect to their fraud claim regarding the sewer lateral encroachment, the trial court erred in granting summary judgment to the Sparks on that claim.

10

3. We likewise find that genuine issues of material fact exist regarding the Wheats' fraud claim based on the basement water intrusion. The Sparks argue that they satisfied their duty of disclosure by acknowledging the past problem and disclosing "an attempted repair to the water leaks they experienced," and the Wheats were therefore on notice of the defect and cannot show justifiable reliance. We disagree with the Sparks' characterization of the additional information provided in the addendum to their Disclosure. A jury would be authorized to find that the Sparks' explanation that "[d]uring very heavy rains the front corner of the basement occasionally became damp. Installed French drains down sides of house to draw water downhill and away from house" was stated in such a way as to induce a purchaser to believe that the problem was in the past and had been resolved, not that it was an "attempted" repair.[5] Moreover, there is evidence – namely the email communications between the Sparks and their real estate agent – that the Sparks were experiencing additional leaks at the time they were marketing the Property and that

[5] The Sparks contend that this matter is a classic case of a party having equal knowledge and equal means of discovering the details of the Property and cite to *Rustin Stamp &c., Inc. v. Ray Bros. Roofing &c. Co., Inc.*, 175 Ga. App. 30, 32 (332 SE2d 341) (1985), as support. However, *Rustin Stamp* is distinguishable. There, both the plaintiff and defendant were aware of the incident that allegedly caused the damage, and both were equally unaware at the time of the extent of the damage. Here, only the Sparks were aware of the extent of the leaks in the basement.

11

those current leaks were never disclosed.[6] See *Keller*, 248 Ga. App. at 530 (5) (finding sufficient evidence of the seller's knowledge of continued water leaks to create a genuine issue of material fact).

In this case, although the conclusion that the Wheats should have realized there may be additional water-related defects was *authorized* by the evidence, this conclusion was not *demanded* by the evidence. See *Johnson*, 292 Ga. App. at 83. As discussed above, questions of fraud, including materiality of representations made by a seller and whether the buyer could have protected himself by the exercise of proper diligence are generally questions for the jury. See *Hudson*, 267 Ga. App. at 6; *Westside Supply Co.*, 264 Ga. App. at 243; *Akins*, 271 Ga. at 278-279 (whether the purchaser exercised reasonable diligence was a question for the jury and the trial court properly denied summary judgment for the sellers on this ground). We see no reason to find otherwise here. Because the Wheats have established a genuine issue of material fact as to their fraud claim regarding the basement water intrusion, the trial court erred in granting summary judgment to the Sparks on that claim.

---

[6] The Sparks make an attempt to argue that there is no admissible evidence supporting the Wheats' allegation that the Sparks used fans to dry the basement leaks. However, they fail to argue with any specificity what proffered evidence they are referring to and why it is inadmissible, nor do they cite to any authority in support of their conclusory statement.

12

4. The Wheats further assert that the trial court erred in finding that the Wheat Trust did not have standing. The Sparks argued, and the trial court agreed, that because the Wheat Trust was not a party to the Agreement, it is not in privity with the Sparks and therefore has no standing to bring a claim against them. As a general rule, the Sparks are correct that "an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent." OCGA § 9-2-20 (a). However, where misrepresentation of a material fact is wilfully made to induce another to act and upon which the other acts, privity is not necessary to give rise to the injured party's cause of action. See *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 680-681 (300 SE2d 503) (1983). Therefore, the Wheat Trust's lack of privity here is not an impediment to its standing to bring a fraud claim.

However, in order for a fraud claim to be actionable, the fraud must be based upon a misrepresentation made *to* a defrauded party and relied upon *by* the defrauded party. See *Florida Rock &c., Inc. v. Moore*, 258 Ga. 106, 106 (1) (365 SE2d 836) (1988).[7] Here, as the Sparks have noted, the Wheat Trust was not even in existence

---

[7] Although there is a limited exception to this general rule where "A, having as his objective to defraud C, and knowing that C will rely upon B, fraudulently induces B to act in some manner on which C relies, and whereby A's purpose of

13

at the time the alleged misrepresentations (or fraudulent concealments) were made. Therefore, no evidence exists that the Wheat Trust relied on the alleged misstatements. See *UWork.com, Inc. v. Paragon Technologies, Inc.*, 321 Ga. App. 584, 599 (5) (740 SE2d 887) (2013) (finding that, "for a misrepresentation to a third party to constitute actionable fraud under *Florida Rock*, the defrauded party must be induced to act or forbear from acting as a result of the misrepresentation made to the third party"). Accordingly, we find that the trial court did not err in granting summary judgment as to the claims made by the Wheat Trust.[8]

5. The Wheats next challenge the trial court's holding that Mr. Wheat was not damaged. The Sparks contend, and the trial court agreed, that because Mr. Wheat conveyed his interest in the Property to the Wheat Trust, he was no longer an owner of the Property, and therefore, was not damaged by any alleged fraud. The Wheats, however, each averred that they individually expended time and money in securing

---

defrauding C is accomplished," there is no indication in the record that the Sparks even knew that the Wheat Trust would be created following the closing on the Property. (Citation and punctuation omitted.) *UWork.com, Inc. v. Paragon Technologies, Inc.*, 321 Ga. App. 584, 599 (5) (740 SE2d 887) (2013). Therefore, that limited exception is not applicable here.

[8] We will affirm the grant of summary judgment if it is right for any reason. See, e.g., *Travelers Excess &c. Co. v. City of Atlanta*, 297 Ga. App. 326, 326 (677 SE2d 388) (2009).

14

an easement from the neighbors and the City of Decatur. They further averred that they each individually spent time and money in making the necessary repairs to the basement to prevent further leaks. Mr. Wheat also averred that the money expended in solving these two problems was paid for out of the Wheats' joint checking account.

In addition, the Wheats pled for general damages. "General damages are those which the law presumes to flow from any tortious act, and they may be awarded on a fraud claim." (Citation omitted.) *Economic Exterminators of Savannah, Inc. v. Wheeler*, 259 Ga. App. 192, 192 (1) (576 SE2d 601) (2003). Moreover, "[g]eneral damages awarded on a fraud claim may cover a broader range of damages than those awarded on contract claims." (Citation omitted.) *Cavin v. Brown*, 246 Ga. App. 40, 43 (2) (a) (538 SE2d 802) (2000). This broader range of damages is not necessarily limited to pecuniary losses and includes inconvenience. See *Johnson*, 292 Ga. App. at 83 (holding that material issues of fact remained as to whether, as a result of the alleged fraud, plaintiff suffered general damages, including wounded feelings and inconvenience). Because there is sufficient evidence in the record to allow a jury to find that Mr. Wheat was individually damaged, we find that the trial court incorrectly held that Mr. Wheat's lack of ownership in the Property precluded his proof of damages.

6. The Wheats also argue that the trial court erred in applying the merger doctrine to their fraud claims. In the parties' Agreement, the following clause was included in Paragraph 18(c):

> Binding Effect, Entire Agreement, Modification, Assignment: This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended, modified or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written agreement of Seller. Any assignee shall fulfill all the terms and conditions of this Agreement.

Entire agreement clauses or merger clauses in affirmed sales contracts are commonly asserted as a defense by sellers to estop buyers from claiming that they relied on misrepresentations made outside the contract. See *Browning v. Stocks*, 265 Ga. App. 803, 806 (2) (595 SE2d 642) (2004). As noted above, the Wheats have elected to affirm the contract and sue for damages resulting from the alleged fraud. Generally, in electing this remedy, "[b]ecause the allegedly defrauded party elected to affirm the contract, that party is bound by the contract's terms and is subject to any

16

defenses which may be based on the contract." (Citation omitted.) *Keller*, 248 Ga. App. at 528 (2).

However, "where a buyer affirms the sales contract and sues claiming, not that the seller made extracontractual oral or written misrepresentations about the purchased property, but that the seller actively or passively concealed damage or defects in the purchased property, there is no basis for using an entire agreement clause in the sales contract as a defense to the suit." *Browning*, 265 Ga. App. at 806. Because the Wheats claim that the Sparks concealed defects in the Property, the merger clause does not apply to their claims of fraud, and the Wheats are not limited to the four corners of the Agreement. Moreover, we note that it is undisputed that the Disclosure Statement itself was made a part of the contract. We also find that the Owners' Affidavit is a subsequent representation not covered by the merger clause.[9]

---

[9] Even if the Sparks are correct that their Owners' Affidavit was not made a part of the Agreement and subject to the merger clause, thereby preventing the Wheats from using it as the basis for their claim that they were fraudulently induced to enter into the Agreement by misrepresentations in that affidavit, we have previously held that such statements are otherwise relevant. See *Browning*, 265 Ga. App. at 806 (holding that the seller's separate property disclosure statement was relevant to the buyers' claim that the seller fraudulently induced the sale by actively concealing termite damage).

17

Therefore, the trial court erred in concluding that the Wheats were barred from claiming that they relied on misrepresentations not contained within the Agreement.

7. In their final enumeration of error, the Wheats claim that the trial court erred in granting summary judgment on their derivative claims for punitive damages, attorney fees, and litigation costs and expenses. An award of attorney fees, costs, or punitive damages is derivative of a plaintiff's substantive claims. See, e.g., *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 52 (5) (668 SE2d 737) (2008). Fraud is an intentional tort for which punitive damages may be awarded. See *Zieve v. Hairston*, 266 Ga. App. 753, 761 (598 SE2d 25) (2004). Furthermore, where a plaintiff has set forth a valid claim for an intentional tort, such as fraud, he may be entitled to recover the expenses of litigation, including attorney fees. See *Bunch v. Byington*, 292 Ga. App. 497, 504-505 (5) (664 SE2d 842) (2008). Because the trial court erred in granting summary judgment on Mr. and Ms. Wheats' substantive fraud claims, the court likewise erred in granting summary judgment on their request for attorney fees, costs, and punitive damages as derivative of those claims.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Dillard, J., concur.*