**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2025**

# In the Court of Appeals of Georgia

A25A1091. VENETIAN HILLS APARTMENTS, LLC v. HUGHES.

DAVIS, Judge.

In this wrongful death action involving questions of premises liability between a landlord and tenant, Venetian Hills Apartments, LLC ("landlord") appeals the trial court's order denying its motion for judgment notwithstanding the verdict ("judgment n.o.v.") and motion for new trial. Specifically, the landlord argues that, having fully parted with possession of the premises, the trial court erred in denying its judgment n.o.v. under OCGA § 44-7-14 and proximate cause principles. Alternatively, the landlord claims it is entitled to a new trial based on the trial court's jury charges, which the landlord contends conflated landlord-tenant and premises liability law.

Lastly, the landlord asserts the verdict shocks the conscience and maintains the judgment must be reduced based on several statutory grounds.[1]

After careful review, and with the benefit of oral argument, we conclude the trial court properly denied the landlord's motion for judgment n.o.v. But we determine the trial court did not correctly charge the jury on the applicable law and that this error was harmful. Therefore, we vacate the judgment entered upon the verdict and remand for a full retrial. We do not reach the landlord's remaining contentions.

Viewed in light most favorable to the party who secured the verdict,[2] the evidence at trial showed that the landlord owned and operated Venetian Hills Apartments. Sometime in 2012, the landlord converted town homes into units consisting of one or more rented rooms, but the units were not prepared with the fire protection measures mandated by law. George Hughes resided in one such unit along with three other tenants with whom he shared the apartment's interior passageways and halls, among other facilities.

---

[1] We organized the landlord's contentions in a slightly different order than it did.

[2] See *Thakkar v. Parikh*, 375 Ga. App. 621, 621-622 (1) (917 SE2d 193) (2025).

On March 17, 2017, as Hughes slept in his room, Roger Lydell — another tenant living in the same unit — brought a guest, Karmara Wheeler, to the house. At some point, Lydell demanded she perform oral sex on him, but Wheeler refused, which upset Lydell and led to a "tussle." Wheeler attempted to get away and hid in the downstairs closet where she set a sock on fire before fleeing through the front door. Behind her, the fire quickly spread upstairs where, in the aftermath, Hughes was found burned to death in his apartment.

In 2019, Hughes' estate sued the landlord under various theories, including negligence, negligence per se, premises liability under OCGA § 51-3-1, and landlord liability under OCGA § 44-7-14. After considering the case, a jury found for the estate and awarded substantial damages. The landlord then filed a series of post-judgment motions, all of which the trial court denied. This is the landlord's appeal.

1. In its first enumerated error, the landlord argues it was entitled to judgment notwithstanding the verdict (a) because it had fully parted with possession of the premises under OCGA § 44-7-14 and (b) based on Wheeler and Lydell's combined wrongdoing. We disagree.

Under OCGA § 9-11-50 (a) - (b), a motion for judgment n.o.v. must be granted when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." Conversely, if "there is conflicting evidence, or there is insufficient evidence to make a 'one-way' verdict proper, judgment n.o.v. should not be awarded." (Citation omitted.) *Bryant v. Colvin*, 160 Ga. App. 442, 444 (287 SE2d 238) (1981). "As a result, if there is any evidence to support the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is error to grant the motion." (Citation and punctuation omitted.) *Gary v. Brown*, 356 Ga. App. 550 (848 SE2d 161) (2020). This case falls in the second category; that is, the evidence did not demand a "one-way" verdict.

(a) At trial, the landlord's corporate representative testified that Hughes' home had been modified from a three bedroom single occupancy unit into a four-bedroom "efficiency" apartment and that the landlord did not "prepare the unit for fire protection" or "take any new measures to protect the tenants from fire." Several tenants also testified that Hughes' apartment lacked basic fire safety measures, such as fire alarms, sprinklers, and smoke detectors. And an expert testified that the lack

4

of fire safety measures violated rules promulgated by the state Commissioner of Insurance as well as numerous fire safety statutes, regulatory provisions, and statewide minimum fire safety standards. See, e.g., OCGA § 25-2-40 (a) (1) (requiring all dwellings to have a smoke detector in good working order). As a result — even if the landlord fully parted with possession — the jury could find it liable under OCGA § 44-7-14 "for damages arising from defective construction or for damages arising from the failure to keep the premises in repair."[3] See also *Pajaro v. South Ga. Bank*, 339 Ga. App. 334, 336 (793 SE2d 209) (2016) (under OCGA § 44-7-14, an out-of-possession landlord "is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair[.]"); *Parke Towne North Apartments, LLC v. Castro*, 349 Ga. App. 692, 695 (3) (824 SE2d 730) (2019) ("The landlord, the owner of the underlying estate, cannot avoid duties created by

---

[3] OCGA § 44-7-14 states:

Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, *however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair*. (emphasis supplied).

housing codes. This principle applies with equal force to a landlord's violation of a duty created by a building code or other regulatory provision affecting safety of the premises.") (citation and emphasis omitted); OCGA § 44-7-2 (b) (3) (specifically providing that a landlord cannot avoid duties created by housing codes).

(b) As for proximate cause, the evidence authorized the jury to conclude that Hughes' injuries arose from the landlord's defective construction or failure to keep the premises in repair.

> [W]hether proximate cause exists in a given case is a mixed question of law and fact. It requires both factfinding in the 'what happened' sense, and an evaluation of whether the facts measure up to the legal standard set by precedent. Ordinarily, both determinations are most appropriately made by a jury upon appropriate instructions from the judge. The decision may be made by the trial judge or appellate court only if reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of foreseeability) to the facts. In other words, although what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases.

(Citations and punctuation omitted.) *Atlanta Obstetrics & Gynecology Grp. v. Coleman*, 260 Ga. 569, 570 (398 SE2d 16) (1990). At trial, the landlord emphasized Wheeler's conduct in relation to Hughes' death as the proximate cause of his death. "[T]his

case[,]" argued defense counsel, "is about the death of a man who died in an intentional fire set by a woman name[d] Kamara Wheeler[.]" The estate presented the jury with an alternate theory:

> [T]he simple truth is Ms. Wheeler started the fire. . . . There's no dispute about that. But this case is about the death of George Hughes. It's Venetian Hills' negligence that caused his death. It's the lack of the bare minimum fire safety equipment that led to his death.

Along those lines, the estate presented several witnesses who testified that Hughes' unit lacked minimum fire protection measures, including fire alarms, smoke detectors, and a sprinkler system. Further, the estate's expert opined that the outcome in this case would have been different but for the landlord's original negligence. The following colloquy is illustrative:

> Q: If Venetian Hills had the minimum fire safety equipment, would this fire that happened March of 2017 have turned out the same with what happened to the people that were inside?
> A: No; because the early detection and the sprinkler system would have been controlling it. Everybody would have been able to walk out their doors without any issues. If you were concerned about going down the stairs, you could wait until the fire department got there because they will get called by the fire alarm. I think their arrival time was five minutes after they got the alarm. . . .
> Q: When you say you should have been able to walk down the steps and everyone could have been rescued by the fire department, you're talking specifically about . . . Mr. Hughes?

A: Correct[.]

Given this evidence, the jury could reject the landlord's theory and resolve the issue of proximate cause in the estate's favor.

Lastly, and contrary to the landlord's contention, the jury could conclude that Hughes' death was a probable and natural consequence of the landlord's negligence. It is well settled

> that the proximate cause of an injury may be two separate and distinct acts of negligence acting concurrently and that the mere fact that the plaintiff's injuries would not have been sustained had only one of the acts of negligence occurred will not of itself operate to limit the other act as constituting the proximate cause.

(Citation and punctuation omitted.) *Granger v. MST Transp., LLC*, 329 Ga. App. 268, 270 (1) (764 SE2d 872) (2014); *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002) (stating the original wrongdoer is responsible for consequences resulting from an intervening act when the subsequent injury was probable). In this regard, a jury could make three critical findings based on the evidence: (1) the landlord's conduct and Hughes' injuries were not too remote; (2) Hughes' injuries were reasonably foreseeable consequences of the landlord's failure

8

to install adequate fire safety measures; and (3) Wheeler and Lydell's actions did not break the causal connection. Accordingly, the jury was authorized to find that an intervening act did not insulate the landlord from liability. See *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 842 (797 SE2d 87) (2017) ("[I]f the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.") (citation omitted).

Because the evidence at trial authorized the jury to find the landlord liable under OCGA § 44-7-14 and general proximate cause principles, we conclude the trial court did not err in denying the landlord's motion for judgment n.o.v.

2. Next, the landlord argues that a new trial is required because the trial court's charge did not reflect the applicable law and created confusion. We agree.

> We review an allegedly erroneous jury instruction de novo. In assessing whether a jury instruction was erroneous, it must be evaluated in the context of the trial court's jury

> instructions as a whole, including consideration of a preprinted verdict form. Indeed, the only requirement regarding jury charges is that they were, as given, correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence.

(Citations and punctuation omitted.) *United Obstetrics & Gynecology, P.C. v. Robinson*, 376 Ga. App. 198, 200 (1) (918 SE2d 365) (2025). "And it is a question of law whether evidence is sufficient to support the giving of a particular charge[.]" *Southeastern Pain Specialists, P.C. v. Brown*, 303 Ga. 265, 270-271 (2) (a) (811 SE2d 360) (2018).

Before, during, and after the charge conference, and again following the verdict, the landlord objected to the trial court's charge under OCGA § 51-1-3[4] and argued that the issues were governed solely by OCGA § 44-7-14. Specifically, the landlord argued:

> The status of someone as an invitee, licensee, or trespasser is not relevant when you're looking at the landlord/tenant relationship. So, although, it's true that George, Mr. George, as he's been called, was an

---

[4] OCGA § 51-3-1 provides that "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

invitee, that's true. But the duties we're talking about now are governed, not by the general premises liability statute but rather by 44-7-14[.]

The estate argued that it was proper to charge the jury under OCGA §§ 44-7-14 and 51-3-1 because although "Hughes. . . rented a room inside a boarding house[,] . . . the landlord[] . . . maintain[ed] not just the right to inspect and repair certain areas of the boarding house, but it maintain[ed] control over certain common areas of the boarding house." The trial court agreed with the estate and instructed the jury on OCGA §§ 44-7-14 and 51-3-1. We conclude that, because the evidence did not support a claim under OCGA § 51-3-1, the trial court erred by charging the jury under that statute.

(a) First, we start by determining the applicable statute. As previously stated, OCGA § 44-7-14 provides that

[h]aving fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

11

On the other hand, under OCGA § 51-3-1, "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." In construing these two statutes, the Supreme Court of Georgia recognized that "[i]n many instances, a landlord's plot of land contains both areas that are possessed by the landlord (such as the common areas of an apartment complex) and areas possessed by tenants (i.e., the apartments themselves)." *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 176 (2) (a) (856 SE2d 267) (2021). Thus, "[i]n such cases, a landlord's tort liability for a danger on its property is determined by the area where that danger lurks. If the dangerous condition that ultimately causes an injury is located in an area the landlord still possesses, then liability under OCGA § 51-3-1 et seq. applies, and OCGA § 44-7-14 does not apply by its own terms." Id. "Conversely, if the dangerous condition exists in an area possessed by the tenant (such as in the tenant's residence), then a landlord's liability derives from OCGA § 44-7-14 and not from OCGA § 51-3-1." Id.; see also *Plott v. Cloer*, 219 Ga. App. 130, 131 (1) (464 SE2d 39) (1995) ("[W]here . . . the owner has fully parted with possession by rental or lease his liabilities are

12

measured by (OCGA § 44–7–14), (OCGA § 51–3–1) having no application.") (citation and punctuation omitted). The dispositive question then is whether Hughes possessed the area where the cause of the injury lay.[5] Under the facts here, we conclude that he did, and thus the landlord's liability was governed solely by OCGA § 44-7-14.

To begin, Hughes and Venetian Hills had a landlord-tenant relationship under OCGA § 44-7-1 (a). The parties had executed a lease agreement and Hughes paid rent for the right "to possess and enjoy" the bedroom for a fixed period. Id. Moreover, Hughes used the bedroom, and he and other tenants inside the unit shared some other areas of the boarding house, which is generally sufficient to establish actual possession.[6] See *Efficiency Lodge, Inc. v. Neason*, 316 Ga. 551, 560 (2) (b) (i) (889 SE2d 789) (2023) ("Using property as a home ordinarily establishes possession because the kinds of acts associated with using property as a home match up with traditional hallmarks of possession."). The parties' relationship coupled with Hughes' use of the

_____

[5] Possession is a legal concept found throughout property law. See *Efficiency Lodge, Inc. v. Neason*, 316 Ga. 551, 559 (2) (b) (i) (889 SE2d 789) (2023). "[I]t involves a physical relationship with and the exercise of sufficient acts of ownership and control with respect to the subject property." Id.

[6] The fact that Hughes possessed portions of the unit with other tenants has no bearing on our analysis because, as the landlord correctly argues, the proper focus of the issue concerns *the landlord's* possession.

property as his home therefore established possession. And with possession, Hughes was "entitled to exclusive occupancy during the term of [his] tenancy[.]" *Ross v. Jackson*, 123 Ga. 657, 658 (51 SE 578) (1905); see also *Neason*, 316 Ga. at 560 (2) (b) (i) ("When someone uses property as a home . . . such use is marked by various acts of ownership and control."). As for the subsidiary question — where the cause of the injury lay — the evidence showed that the fire originated in the unit's downstairs closet. So the cause of the injury lay in an area possessed and controlled by Hughes; therefore, the landlord's liability fell exclusively under OCGA § 44-7-14. See *Jordan v. H. J. Russell & Co.*, 371 Ga. App. 8, 11 (899 SE2d 514) (2024) ("[T]he cause of the injury lay inside the apartment and the Defendants' potential liability therefore derives from OCGA § 44-7-14, not OCGA § 51-3-1."). As a result, the court's charge was legally erroneous.

Nevertheless, the estate argues the landlord retained the right to control what they describe as "common areas," including the downstairs closet. As it relates to those spaces, the estate claims the landlord had a duty under OCGA § 51-3-1.[7] But the

[7] As a second basis to support its contention, the estate points to the landlord's stipulation that Hughes was an invitee. Importantly, however, the landlord qualified the stipulation in this way:

14

premise of its argument is misplaced. What the estate identifies as "common areas" — the downstairs closet, living room, upstairs hallway — is not what our decisional law recognizes as common areas.[8]

"Common areas" include "areas of an apartment complex to which *tenants and others* are allowed access[.]" (Emphasis supplied.) *Plott*, 219 Ga. App. at 131 (1). These areas typically consist of "halls, steps, porches, and other parts of the building[.]" *Maloof v. Blackmon*, 105 Ga. App. 207, 208 (4) (a) (124 SE2d 441) (1962). For example, a parking lot of an apartment complex is considered a common area. *Cham*,

> [A]lthough, it's true that George, Mr. George, as he's been called, was an invitee, that's true. But the duties we're talking about now are governed, not by the general premises liability statute but rather by 44-7-14 which is only partially reflected in the next section or next sentence of the Court's packet which reflects the Plaintiff's Requested Charge. So, respectfully, we think that the charge on invitees should be omitted[.]

Consequently, we disagree that the stipulation authorized the trial court to charge the jury under OCGA 51-3-1 or that the landlord either acquiesced or induced error. To the contrary, the landlord was adamant that "there[] was no evidence that th[e] [events] occurred in a common area possessed by the landlord and, hence, the 51-3-1 has no application."

[8] Neither OCGA § 44-7-1 et seq. nor OCGA § 51-3-1 et seq. define the term "common area."

311 Ga. at 180 (3). Similarly, an exterior staircase of an apartment building serving multiple units is considered a common area, *Pollard v. Deloach*, 372 Ga. App. 303, 305 (2) (903 SE2d 329) (2024), just as an apartment playground accessible by all residents and their guests is considered a common area. See *Nesmith v. Starr*, 115 Ga. App. 472, 473 (155 SE2d 24) (1967). Each of these examples, of course, share the same or similar attributes: (i) the landlord retained possession of the area such that it was able to act in order to protect *others* from harm; and (ii) the area was common to residents at large and accessible by others.

Turning to this case, the hazardous condition lay in an area which shared none of the attributes outlined in the preceding paragraph. The landlord, for instance, did not retain possession of the downstairs closet. Moreover, the closet was not accessible to residents at large or anyone else beyond those living in the unit. Finally, that the landlord may have retained the right to enter the property

> for landlord-related purposes does not evidence such dominion and control of the premises so as to vitiate the landlord's limited liability imposed by OCGA § 44-7-14 and replace it with the liability imposed by OCGA § 51-3-1, the premises liability statute[.] *A landlord's retention of the right to enter, inspect and repair is not inconsistent with a full surrender of possession to the tenant.*

(Citation omitted; emphasis supplied.) *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998); *Lemontree Properties, LLC v. Samples*, 357 Ga. App. 410, 413 (1) (c) (850 SE2d 849) (2020) ("A landlord may retain some rights with respect to the property and still maintain its status as an out-of-possession landlord.").

In sum, we conclude as a matter of law that the cause of the injury lay in an area possessed by Hughes and that it was error to charge the jury on premises liability law. See *Williams v. Kasulka Properties, LP*, 370 Ga. App. 653, 654-55 (2) (898 SE2d 843) (2024) ("[I]t is error to analyze an out-of-possession landlord's liability using the principles of premises liability set forth in OCGA § 51-3-1."); *Duffield v. Chui*, 314 Ga App. 214, 216 n.4 (723 SE2d 506) (2012) (noting that the trial court is obligated to correctly instruct the jury only on theories that are legally cognizable); *Martin v. Johnson-Lemon*, 271 Ga. 120, 123 (2) (a) (516 SE2d 66) (1999) (explaining it is error to expand the scope of an out-of-possession landlord's tort liability).

(b) Second, we conclude that the error was presumptively harmful. In relevant part, the trial court charged the jury as follows:

> If you find that Defendant, Venetian Hills, maintained the right to enter and control the downstairs living room, downstairs kitchen, stairwell, and upstairs hallway, the following law applies: A person who enters the

premises of another for any purpose connected with the business of the owner or occupier is an invitee, and the owner or occupier of the premises owes that person the duty to exercise ordinary care in keeping the premises safe. That duty would extend to all portions of the premises that are reasonably necessary for the invitee to use in the course of the business for which the invitation was given.

When an invitee enters the premises of a landowner, then the owner is liable in damages to the invitee for injuries caused by the owner's failure to exercise ordinary care in keeping the premises and approaches safe.

This charge unmistakably invited the jury to find the landlord liable under OCGA § 51-3-1, a statutory ground which, for the reasons stated above in Division 2 (a), was inapplicable by the facts in this case.[9] See *MARTA v. Tyler*, 360 Ga. App. 710, 714 (1) (860 SE2d 224) (2021) ("A charge unauthorized by the evidence, which injects into the case issues not made by the pleadings or evidence, is presumed to be harmful to the losing party, and such a charge is grounds for new trial unless it is apparent that the jury could not have been misled by it.") (citation omitted). The effect, in turn, was

---

[9] Indeed, although the trial court instructed the jury that it could find the landlord liable for "damages to the invitee for injuries caused by the owner's failure to exercise ordinary care in keeping the premises and approaches safe[,]" "Georgia law has long excepted landlords from general landowner liability with respect to premises possessed by tenants." *Cham*, 311 at Ga. 175 (2) (a).

18

to supplant the landlord's limited duty to keep the premises in repair with "a harsher rule of responsibility than that to which [it] w[as] already subject." (Citation omitted.) *Birdsey v. Greene*, 176 Ga. 688, 690 (168 SE 564) (1933).

Moreover, our Supreme Court has been clear that OCGA § 44-7-14 must be interpreted narrowly. *Cham,* 311 Ga. at 175 (2) (A) n.4. To that end, the Court has "held . . . that OCGA § 44-7-14 does not include a "duty of maintenance," and "any alteration or expansion of an out-of-possession landlord's statutory liability must emanate from the legislature and not from the courts of this State." (Citation omitted.) Id. However, by charging the jury on premises liability, the trial court expanded the statutory liabilities from which the jury could find the landlord responsible. So, "the erroneous instruction did not merely draw the jurors away from the true issues in dispute, but actually authorized them to return a verdict in favor of [the estate] based on a legally invalid theory of recovery." (Citation omitted.) *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 87 (1) (b) (684 SE2d 279) (2009).

Given all of the above, the verdict, and the judgment entered thereon, must be vacated. And — although we concluded in Division 1 that the evidence authorized the

jury to find the landlord liable under OCGA 44-7-14 — because the verdict was a general one, we cannot determine whether the jury found against the landlord by applying landlord-tenant or premises liability law. See *Brown*, 303 Ga. at 273 at (2) (b) ("[W]hen a case is submitted to a jury on both erroneous and proper bases and the jury returns a general verdict such that we cannot determine on which basis the verdict was entered, the verdict cannot stand."); *Ford Motor Co.*, 300 Ga. App. at 87 (1) (b) (same). As such, no portion of the verdict can be preserved, and a full retrial is necessary.

3. Based on our holding in the preceding Divisions, a retrial on the estate's derivative claims, including punitive damages and attorney's fees, must also be had. See *Brown*, 303 Ga. at 273 (2) (b) ("[O]ur determination that the jury received an improper instruction on liability requires a new trial on all . . . phases."); see also *Stephen A. Wheat Trust v. Sparks*, 325 Ga. App. 673, 682 (7) (754 SE2d 640) (2014) ("An award of attorney fees, costs, or punitive damages is derivative of a plaintiff's substantive claims.").

Because we vacate the jury's verdict, we do not reach the landlord's remaining challenges with respect to the amount of the verdict, the attorney fees award, or apportionment of fault.

*Judgment vacated and case remanded. Rickman, P. J., and Gobeil, J., concur.*